UNITED STATES, Appellee

v.

Jeffrey G. TOOHEY, Staff Sergeant
U.S. Marine Corps, Appellant

No. 05-0127

Crim. App. No. 200001621

United States Court of Appeals for the Armed Forces

Argued December 7, 2005

Decided August 9, 2006

ERDMANN, J., delivered the opinion of the court, in which
GIERKE, C.J., and EFFRON and BAKER, JJ., joined.  CRAWFORD, J.,
filed a separate dissenting opinion.

Counsel

For Appellant:  Captain Rolando R. Sanchez, USMC (argued);
Lieutenant Commander Eric J. McDonald, JAGC, USN (on brief).

For Appellee:  Lieutenant Mark H. Herrington, JAGC, USNR
(argued); Colonel W. K. Lietzau, USMC, Commander Charles N.
Purnell, JAGC, USN, Major Kevin C. Harris, USMC, and Lieutenant
Guillermo J. Rojas, JAGC, USNR (on brief).

Military Judge:  R. E. Nunley

**This opinion is subject to revision before final publication**.

United States v. Toohey, No. 05-0127/MC

Judge ERDMANN delivered the opinion of the court.

Staff Sergeant Jeffery G. Toohey entered a not guilty plea to rape and assault consummated by a battery in violation of Articles 120 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 928 (2000). He was convicted by a panel composed of officer and enlisted members and was sentenced to a dishonorable discharge, confinement for twelve years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade.[1] The convening authority approved the sentence, and the United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings and sentence. United States v. Toohey, 60 M.J. 703, 720 (N-M. Ct. Crim. App. 2004). We granted review of one issue and specified three additional issues.[2]

---

[1] Staff Sergeant Toohey also entered a guilty plea to adultery in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000). That specification was dismissed when Toohey was found guilty of the charge of rape. Another specification alleging assault with the intent to commit rape in violation of Article 134, UCMJ, was dismissed prior to pleas.

[2] We granted review of the following issue:

> I. WHETHER THE LOWER COURT ERRED BY HOLDING THAT IT WAS HARMLESS ERROR FOR THE MILITARY JUDGE TO HAVE RULED THAT IF APPELLANT WERE TO PUT INTO EVIDENCE HIS CHARACTER OF PEACEFULNESS THEN THE GOVERNMENT WOULD HAVE THE RIGHT TO PUT INTO EVIDENCE THE PORNOGRAPHIC PICTURES FOR IMPEACHMENT PURPOSES.

We specified the following issues for review:

United States v. Toohey, No. 05-0127/MC

Prior to affirming a case in which there has been constitutional error, a reviewing court must be convinced beyond a reasonable doubt that the error was harmless.  Chapman v. California, 386 U.S. 18, 24 (1967).  Although the Court of Criminal Appeals found that the military judge erred in his ruling that defense witnesses on Toohey's character for peacefulness could be questioned about whether they were aware

II.  WHETHER THE UNITED STATES NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED IN DETERMINING THAT APPELLANT WAS NOT DENIED HIS DUE PROCESS RIGHT TO SPEEDY POST-TRIAL AND APPELLATE REVIEW OF HIS COURT-MARTIAL CONVICTION IN LIGHT OF THE 644-DAY PERIOD FROM TRIAL TO CONVENING AUTHORITY'S ACTION, THE 146-DAY PERIOD FROM THAT ACTION TO DOCKETING THE RECORD AT THE COURT OF CRIMINAL APPEALS, AND THE 1440-DAY PERIOD DURING WHICH THE CASE WAS PENDING AT THE COURT OF CRIMINAL APPEALS.

III.  WHETHER THE DELAY IN THE POST-TRIAL AND APPELLATE REVIEW OF APPELLANT'S COURT-MARTIAL CONVICTION IS SO EXCESSIVE AS TO GIVE RISE TO A PRESUMPTION OF PREJUDICE, AND IF SO, WHAT IS THE EFFECT OF THAT PREJUDICE? See UNITED STATES V. JONES, 61 M.J. 80 (C.A.A.F. 2005).

IV. WHETHER THE UNITED STATES NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ABUSED ITS DISCRETION BY DENYING RELIEF UNDER ARTICLE 66(c), UNIFORM CODE OF MILITARY JUSTICE, 10 U.S.C. § 866(c) (2000), BY HOLDING SUCH SENTENCE APPROPRIATENESS RELIEF "SHOULD ONLY BE GRANTED UNDER THE MOST EXTRAORDINARY OF CIRCUMSTANCES," AND BY CONCLUDING "THERE IS NOTHING SO EXTRAORDINARY ABOUT THIS CASE THAT MERITS THE EXERCISE OF OUR ARTICLE 66(c) POWERS."

3

United States v. Toohey, No. 05-0127/MC

Toohey was facing separate child pornography charges, that court found the error to be harmless. Toohey, 60 M.J. at 717. Toohey asserts that the military judge committed error of constitutional dimension and that the Court of Criminal Appeals erred in not testing this error under the constitutional "harmless beyond a reasonable doubt" standard. We find that evidence of Toohey's character for peacefulness was not so material to the defense as to be constitutionally required. The Court of Criminal Appeals utilized the proper test for harmlessness and correctly found that the error was harmless.

Convicted servicemembers have a constitutional due process right to a timely review and appeal of courts-martial convictions. Diaz v. The Judge Advocate General of the Navy, 59 M.J. 34, 37-38 (C.A.A.F. 2003). Toohey asserts that he was denied due process because there was unreasonable and unexplained delay in the 2,240 days between the end of his trial and the date upon which the United States Navy-Marine Corps Court of Criminal Appeals rendered a decision in his case. We hold that Toohey was denied his due process right to speedy post-trial and appellate review.

---

61 M.J. 474 (C.A.A.F. 2005).

4

BACKGROUND

A.  Character evidence of peacefulness.

The initial charges brought against Toohey included rape, assault consummated by a battery, adultery, receiving stolen property, and two specifications relating to child pornography. Upon defense motion, the charges relating to receiving stolen property and child pornography were severed and tried separately.  The instant case proceeded on the offenses alleging sexual misconduct.  At trial, the defense moved to prevent the child pornography and severed charges from being used to impeach defense character witnesses for good military character and for peacefulness.  The military judge ruled that the child pornography could be used as a basis to impeach good military character witnesses and the defense counsel stated that he did not dispute that ruling.  As to potential character witnesses on peacefulness, the military judge ruled that the matter of possessing child pornography could be inquired into on cross-examination as impeachment.  Specifically, the military judge stated:

> [T]here are a series of photographs that are in the Article 32 that obviously would be attached to the record from the standpoint of the Article 32.  They are color photographs, and they depict rather graphically sodomy with young children from age 10 purportedly up through 16 or so.
>
> There are some that are more egregious than others.  Specifically Investigative Exhibit

> 19, photograph J, which depicts a purported
> 14 year-old being anally sodomized and that
> conduct depicted in those pictures is non
> consensual as a matter of law conduct; and,
> therefore, if the defense was to put on a
> character for peaceableness, that would open
> the door for impeachment in that area.

The military judge later added, "I would allow that because it's the specific non consensual aspects of those sexual act[s] that would be what defeats the peaceableness issue." Civilian defense counsel proffered that but for the ruling the defense would have presented "six or seven witnesses who would testify that the accused is a peaceful person, military and civilian witnesses who know him well." The defense did not present these witnesses on Toohey's character for peacefulness.

The Court of Criminal Appeals ruled the military judge abused his discretion in allowing the child pornography to be available to impeach Toohey's character witnesses for peacefulness. Toohey, 60 M.J. at 717. The court found the child pornography irrelevant and, even if marginally relevant, the court concluded it would have been far more prejudicial than probative. Id. The Court of Criminal Appeals then tested this error for prejudice and found none. Id. at 717-18.

B. Speedy post-trial review and appeal.

Toohey was sentenced on August 13, 1998. On June 28, 1999, the military judge authorized substitute authentication of the record of trial, and trial counsel authenticated the record on

August 27, 1999, 379 days after trial.  On May 18, 2000, 644 days after trial, the convening authority took action.  The case was received at the Navy-Marine Corps Court of Criminal Appeals on October 11, 2000 and docketed at that court on October 26, 2000, 805 days after trial.

The Navy-Marine Corps Court of Criminal Appeals granted eleven motions for enlargement of time to Toohey's appellate defense attorney before the defense brief was filed on March 28, 2002 (1,323 days after trial and 518 days after docketing).  The Government filed an answer brief on December 6, 2002 (1,576 days after trial and 253 days from submission of Toohey's brief).  Toohey filed a reply brief on February 6, 2003 (1,638 days after trial).  The Court of Criminal Appeals issued a published opinion on September 30, 2004 (601 days after the completion of briefing).  Six years, one month and seventeen days (2,240 days) elapsed between the completion of trial and the completion of Toohey's appeal of right under Article 66, UCMJ, 10 U.S.C. § 866 (2000).

## DISCUSSION

A.  <u>Character Evidence of Peacefulness</u>.

Toohey claims the military judge's ruling that prevented him from presenting evidence of his character for peacefulness was an error of constitutional magnitude and that the Court of Criminal Appeals should have utilized the constitutional

"harmless beyond a reasonable doubt" standard to test the effect of that error.  Toohey asserts that under the correct standard, the error could not have been found harmless beyond a reasonable doubt.  The Government responds that Toohey's argument on prejudice is speculative and that the error did not have a substantial influence on the findings.[3]  The Government also asserts that any witness on character for peacefulness would have been cumulative in light of testimony from Toohey's ex-wife about his character for peacefulness.

We conclude that Toohey has not met his burden of establishing that this error deprived him of evidence that was "'material and favorable to his defense'" and thus of constitutional dimension.  United States v. Robaina, 39 F.3d 858, 862 (8th Cir. 1994) (quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 873 (1982) (the accused has a "duty to make some showing of materiality")); see also Taylor v. Illinois, 484 U.S. 400, 409 (1988).

This is not a case in which character evidence for peacefulness went "to the heart of appellant's defense."  United

---

[3] The Government also argues that the Court of Criminal Appeals incorrectly found that the military judge abused his discretion by permitting inquiry into the child pornography offenses to impeach witnesses attesting to Toohey's character for peacefulness.  The Government took no action to timely contest or certify the Court of Criminal Appeals' finding that the military judge erred, and we decline to address whether the lower court was correct in finding error.  See United States v.

States v. Brown, 41 M.J. 1, 4 (C.M.A. 1994).  Toohey's testimony

set forth a version of the facts reflecting that the victim was

the aggressor after consensual sex and that she reacted

violently to the fact that he was married.  According to Toohey

he struck her in response to her aggressive actions toward him.

This testimony was supported by testimony that Toohey was a

truthful person and by other evidence as to the victim's actions

and conduct in a bar preceding their leaving together.  Toohey

was permitted to offer substantial evidence in support of his

core defense that the sexual activity between him and the victim

was consensual.  Thus, the ruling in issue did not infringe upon

Toohey's constitutional rights.

For nonconstitutional errors the government bears the

burden of showing "that the error did not have a substantial

influence on the findings."  United States v. Clark, 62 M.J.

195, 200 (C.A.A.F. 2005) (citation and quotation marks omitted);

United States v. Walker, 57 M.J. 174, 178 (C.A.A.F. 2002)

(quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)).

We review the prejudicial effect of an erroneous evidentiary

ruling de novo.  United States v. Diaz, 45 M.J. 494, 496

(C.A.A.F. 1997).  A four-part test is applied to determine

whether this error had a substantial influence on the findings:

---

Kreutzer, 61 M.J. 293, 295 n.2 (C.A.A.F. 2005) (citing United
States v. Grooters, 39 M.J. 269, 273 (C.M.A. 1994)).

United States v. Toohey, No. 05-0127/MC

1. Was the Government's case against Toohey strong and conclusive?
2. Is the defense's theory of the case feeble or implausible?
3. What is the materiality of the proffered testimony?
4. What is the quality of the proffered defense evidence and is there any substitute for it in the record of trial?

United States v. Weeks, 20 M.J. 22, 25 (C.M.A. 1985) (citations omitted). Reversal is not required if the court determines that the finder of fact would not have been influenced by the omitted evidence. United States v. Kaiser, 58 M.J. 146, 149 (C.A.A.F. 2003) (quoting United States v. Davis, 29 M.J. 445, 449-50 (C.M.A. 1988)).

With respect to the assault charge, we conclude that the proffered evidence about Toohey's character for peacefulness would have had no influence on the finder of fact. The Government's evidence on the assault was countered only by an implausible claim that the victim became aggressive and Toohey responded in a reasonable manner to protect himself. Toohey admitted that he struck the victim -- a woman of far less physical stature than Toohey. The excessive violence perpetrated upon the victim was graphically demonstrated by photographs depicting her injuries and the severity of the beating inflicted upon her. The evidence of guilt with respect to assault was overwhelming. See United States v. Humpherys, 57 M.J. 83, 93 (C.A.A.F. 2002) (evidentiary error can be found

10

harmless where the evidence of guilt is overwhelming). The overwhelming nature of the evidence was ultimately reflected in civilian defense counsel's closing argument, "I am telling you that he is guilty of assault and battery. You heard him on the stand say, 'I shouldn't have hit her. I hit her too hard.'"

The evidence of peacefulness would have had no impact upon the finding of guilty of rape. The pivotal question on guilt was when Toohey applied force and for what purpose, not whether he did so. Toohey's admission that he struck the victim minimized the materiality of character for peacefulness evidence. Evidence of peacefulness had little relevance to whether he struck the victim before or after sexual penetration. Even if character for peacefulness evidence might have had some slight value, Toohey received that value when his ex-wife testified that he had never been violent with her. The members obviously rejected the idea that Toohey was peaceful.

We conclude that the additional character evidence for peacefulness would have had no substantial influence on the findings in this case and that Toohey was not prejudiced by the military judge's erroneous ruling.

B. Speedy Post-Trial Review and Appeal.

Toohey contends that the 2,240 days that elapsed between the completion of his court-martial and the decision of the Court of Criminal Appeals was unreasonable and denied him due

United States v. Toohey, No. 05-0127/MC

process. Toohey asserts he was prejudiced by the constant changes of counsel during his appeal, by the conditions of his post-trial confinement and by the negative impact this delay would have upon his ability to defend himself at a rehearing. The Government responds that Toohey's due process rights were not violated. It asserts that Toohey's appeal has not been impaired and that his assertions of general prejudice are too speculative to warrant relief. We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal. United States v. Moreno, 63 M.J. 129, 135 (C.A.A.F. 2006) (citing United States v. Rodriguez, 60 M.J. 239, 246 (C.A.A.F. 2004); United States v. Cooper, 58 M.J. 54, 58 (C.A.A.F. 2003)).

In Moreno, we again affirmed "that convicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." Id. at 135 (citing United States v. Toohey (Toohey I), 60 M.J. 100, 101 (C.A.A.F. 2004)[4]; Diaz, 59 M.J. at 37-38). We also set forth the framework for our analysis of speedy post-trial review and appeal cases utilizing the four factors set forth in Barker v. Wingo, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reasons for the

---

[4] While his case was pending review at the Court of Criminal Appeals, Toohey sought extraordinary relief from this court because of post-trial and appellate delay. United States v. Toohey (Toohey I), 60 M.J. 100 (C.A.A.F. 2004), reports our disposition of that request for extraordinary relief.

12

delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice.  Moreno, 63 M.J. at 135; see United States v. Jones, 61 M.J. 80, 83 (C.A.A.F. 2005); Toohey I, 60 M.J. at 102.  Concerning those factors, we stated:

> Once this due process analysis is triggered by a facially unreasonable delay, the four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation. Barker, 407 U.S. at 533 ("We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of [due process]."); Simmons v. Reynolds, 898 F.2d 865, 868 (2d Cir. 1990) ("[N]o one factor is dispositive and all are to be considered together with the relevant circumstances.").
>
> We analyze each factor and make a determination as to whether that factor favors the Government or the appellant. See Rheuark v. Shaw, 628 F.2d 297, 303 (5th Cir. 1980) (calling for an ad hoc evaluation of the four Barker factors).  We then balance our analysis of the factors to determine whether there has been a due process violation. Barker, 407 U.S. at 533 ("[C]ourts must still engage in a difficult and sensitive balancing process.").  No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding.

Moreno, 63 M.J. at 136.  Using the analysis we developed in Moreno, we turn to Toohey's case.

1.  Length of the delay.

When the matter of appellate delay in this case was initially before this court on Toohey's petition for extraordinary relief, we examined this factor and concluded that

13

"the aggregate delay facially appears to be unreasonable, even for this serious contested case." Toohey I, 60 M.J. at 103. We adhere to that determination. This 2,240-day delay is facially unreasonable and we will proceed to review the remaining Barker factors.

2. Reasons for the delay.

Here we look at each stage of the post-trial period, at the Government's responsibility for any delay and at any explanations for delay including those attributable to Toohey. It took 2,240 days from the end of Toohey's trial until the issuance of the Court of Criminal Appeals' decision, a period of over six years. The 644 days between trial and the convening authority's action is excessive and unexplained. Although the record reflects a need for substitute authentication in the absence of the military judge, it still took over a year to prepare and authenticate this record. It then took almost nine additional months for the convening authority to act. Nothing in the record satisfactorily explains these delays.

After the convening authority's action, the record was not received at the Court of Criminal Appeals for another 146 days. This delay in performing what is essentially a clerical task is wholly unexplained. See United States v. Dunbar, 31 M.J. 70, 73 (C.M.A. 1990) (referring to such delays as "the least defensible of all" post-trial delays).

14

United States v. Toohey, No. 05-0127/MC

The case was then under the control of the Court of Criminal Appeals for 1,450 days before an opinion was issued by that court. The record reflects that some time was spent gathering documents omitted from the record of trial. This, however, does not excuse that portion of the delay because preparation of the record is a government responsibility that should have been completed before the record left the trial forum. See Rule for Courts-Martial 1103. The record also contains eleven defense motions for enlargement of time within which to file a brief. Enlargement motions numbers four through eleven each contained the same reason for the request: "other case load commitments." As we noted in reviewing similar enlargements in Moreno, "there was no evidence demonstrating that the enlargements were directly attributable to" Toohey:

> While appellate defense counsel's caseload is the underlying cause of much of this period of delay, responsibility for this portion of the delay and the burden placed upon appellate defense counsel initially rests with the Government. The Government must provide adequate staffing within the Appellate Defense Division to fulfill its responsibility under the UCMJ to provide competent and timely representation. See Article 70, UCMJ, 10 U.S.C. § 870 (2000). Ultimately the timely management and disposition of cases docketed at the Courts of Criminal Appeals is a responsibility of the Courts of Criminal Appeals.

15

Moreno, 63 M.J. at 137. For the same reasons, we decline to hold Toohey responsible for the delays requested by appellate defense counsel to review and brief other cases.

We also note that this case was fully briefed and pending before the Court of Criminal Appeals for 601 days before a decision was issued. We acknowledge that this was a complex, contested case. While this delay was extensive, as noted in Moreno, we approach this period of time with reasonable deference and apply "a more flexible review of this period, recognizing that it involves the exercise of the Court of Criminal Appeals' judicial decision-making authority." Id. at 137.

In sum, the record lacks reasonable justification for this overall period of delay, and this factor weighs heavily in favor of Toohey.

3. Assertion of the right to a timely review and appeal.

In Moreno, although he did not object to delays or assert a delay issue until his case was before this court, we did not weigh this factor heavily against the appellant. Id. at 138. Toohey, however, has repeatedly asserted his right to timely review and appeal. On September 20, 2000, Toohey wrote the Judge Advocate General requesting both relief for delay and convening authority action within a reasonable time. On October 19, 2000, Toohey requested the appointment of additional

16

appellate defense counsel specifically because his case had been delayed and claimed that there were several complex issues that had been aggravated by the delay.  On February 14, 2001, Toohey moved the Court of Criminal Appeals for relief and sentence credit for inordinate post-trial delay.

In his brief to the Navy-Marine Corps court, Toohey sought relief for "inordinate post-trial delay" for the time between trial and receipt of his case at the lower court.  On January 13, 2004, Toohey again requested that the lower court grant appropriate relief in the form of deferment of his sentence because of post-trial delay.  On February 18, 2004, Toohey sought extraordinary relief from this court.  See Toohey I, 60 M.J. at 100.  Toohey also moved this court for extraordinary relief in the nature of a writ of habeas corpus on June 18, 2004.

Where the defendant has asserted his speedy trial right, it is "'entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.'"  Moreno, 63 M.J. at 138 (quoting Barker, 407 U.S. at 531-32).  This factor weighs heavily in favor of Toohey.

4.  Prejudice.

Our framework for analyzing prejudice under this fourth factor considers three interests:  "'(1) prevention of oppressive incarceration pending appeal; (2) minimization of

17

anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.'" Id. at 138-39 (quoting Rheuark v. Shaw, 628 F.2d 297, 303 n.8 (5th Cir. 1980), cert. denied, 450 U.S. 931 (1981)). Oppressive incarceration pending appeal relates to the substantive merit of an appellant's grounds for appeal. We have determined that Toohey suffered no prejudice from the military judge's erroneous ruling. Thus, his incarceration was not lengthened by the delay and he is in no worse position due to the delay. See Cody v. Henderson, 936 F.2d 715, 720 (2d Cir. 1991).

The anxiety and concern subfactor involves constitutionally cognizable anxiety that arises from excessive delay and we "require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." Moreno, 63 M.J. at 140. Toohey claims that he has suffered anxiety because he has been assigned six appellate defense counsel over the years that his case has been in the military appellate process. However, the appellate record of these proceedings reflects that Toohey was represented by only three detailed appellate defense counsel while his case was before the Court of Criminal Appeals. In large part, only two counsel represented Toohey, one filing the

brief and assignment of error, and the other filing the reply brief and presenting oral argument.  The third appellate defense counsel appears to have only signed a motion.  Under other circumstances, frequent changes in counsel may compound delay and create cognizable anxiety under this subfactor.  In this instance, however, the number of counsel who represented Toohey at the lower court is not unusual in light of normal military rotation policies.

We have also considered Toohey's claim that the "overly restrictive and unsanitary conditions" of his confinement caused him to suffer anxiety and concern.  Assuming the conditions were as Toohey claims, those conditions would have been common to all prisoners and not aggravated by the delay in this case.  Even if we were to find that there was some anxiety or concern over the conditions, it does not weigh heavily under this subfactor.  Similarly, the requirement that Toohey register as a sex offender in the state of North Carolina upon his release from confinement is not a form of anxiety related to the delay in this case.  As we have found no basis upon which to question the underlying conviction in this case, Toohey would have been required to register upon his release from confinement regardless of the delay.  See N.C. Gen. Stat. § 14-208.5-208.13 (2006).

19

The final subfactor, impairment of the ability to present a defense at a rehearing, relates directly to whether an appeal on a distinct substantive issue is found to be meritorious and whether a rehearing has been authorized. Because we have found against Toohey on the substantive issue he asserted, this subfactor is not present in this case.

We conclude that Toohey experienced no prejudice from oppressive incarceration, no particularized anxiety or concern awaiting the outcome of his appeal, and no impairment of his defense in that there will be no retrial. This prejudice factor therefore weighs against Toohey.

5. Conclusion -- Barker Factors.

As we noted in Moreno, "no single factor [is] required to find that post-trial delay constitutes a due process violation." Moreno, 63 M.J. at 136 (citing Barker, 407 U.S. at 533). However, in Moreno our balancing included consideration of the conclusion that Moreno had experienced "oppressive incarceration" and "constitutional anxiety." Id. at 139-40. In contrast, Toohey's case presents us with the question of how to strike this due process balance in the absence of any finding of prejudice under the fourth Barker factor. We believe that such circumstances warrant a different balancing of the four factors. Hence, where there is no finding of Barker prejudice, we will find a due process violation only when, in balancing the other

20

three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system.

We have determined that the first three factors weigh heavily in favor of Toohey: unreasonably lengthy delay, no justifiable reasons for the delay, and frequent assertion of the right to speedy review. The weight of these factors leads to the conclusion that the delay in Toohey's case is egregious. Balancing these three factors against the absence of prejudice, we hold that Toohey was denied his due process right to speedy review and appeal. However, before we address whether this constitutional error was harmless beyond a reasonable doubt, we examine the related issue of whether Toohey received a proper review of his case under Article 66(c), UCMJ, by the lower court. Although separate from the appellate due process issue, it has bearing on the resolution of whether this constitutional violation was harmless beyond a reasonable doubt.

C. Article 66(c), UCMJ, Relief for Post-Trial Delay.

We specified a separate issue concerning whether the Court of Criminal Appeals abused its discretion by denying relief under Article 66(c), UCMJ, for unreasonable post-trial delay. Toohey asserts that the lower court abused its discretion by requiring that a case rise to the level of "most extraordinary" before the court would consider exercising its unique Article

66(c), UCMJ, authority.  The Government responds that the lower court did not abuse its discretion by looking to extraordinary circumstances before determining that relief was appropriate. We conclude that the Court of Criminal Appeals applied an erroneous legal standard and thus abused its discretion. Moreover, the lower court's sentence appropriateness review was conducted on the basis that no appellate due process violation had occurred.

Initially we pause to express our concern over the Court of Criminal Appeals apparent conclusion that Toohey's case is not among "the most extraordinary of circumstances."  Toohey, 60 M.J. at 710.  The delays in this case prior to docketing at the Court of Criminal Appeals were extreme, unjustified, and unexplained.  In fact, we have found the delays in this case, considered in light of the reasons for the delay and Toohey's assertion of his rights, to be such that tolerating them would adversely affect the public's perception of the fairness and integrity of the military justice system.  It is simply not acceptable to diminish the importance of the convening authority's clemency powers and the unique nature of the appeal of right under Article 66, UCMJ, by tolerating delays approaching or exceeding two years before that clemency consideration or before the appeal of right is commenced.

Therefore, by requiring a case to achieve "most extraordinary of circumstances" level before the Court of Criminal Appeals would exercise its Article 66(c), UCMJ, authority, the court below abused its discretion. In United States v. Tardif, 57 M.J. 219, 224 (C.A.A.F. 2002), we affirmed the power of a Court of Criminal Appeals to grant sentence relief under Article 66(c), UCMJ, where there has been unreasonable post-trial delay. The exercise of that power does not require a finding of prejudice, nor did our Tardif decision establish any criteria limiting the exercise of that power to only the "most extraordinary" cases.

The essential inquiry remains appropriateness in light of all circumstances, and no single predicate criteria of "most extraordinary" should be erected to foreclose application of Article 66(c), UCMJ, consideration or relief. See United States v. Bodkins, 60 M.J. 322, 324 (C.A.A.F. 2004) ("the court may consider the absence of a defense request for action as one factor among other considerations in assessing the impact of delay in a particular case, but it may not elevate that factor into the conclusive basis for denying relief by using the mere absence of a request to find waiver").

We are also concerned with the lower court's "see also" reference to Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000), in connection with its Article 66(c), UCMJ, powers. See Toohey, 60

23

United States v. Toohey, No. 05-0127/MC

M.J. at 710.  This citation gives rise to a question about whether the Court of Criminal Appeals continues to look for prejudice as a predicate to granting relief under Article 66(c), UCMJ.  As we made clear in Tardif, the Court of Criminal Appeals' responsibility to affirm only so much of the sentence as should be approved "do[es] not implicate Article 59(a)."  57 M.J. at 224.

To assure that Toohey receives the full and proper Article 66(c), UCMJ, review to which he is entitled, we will remand this case to the Court of Criminal Appeals.  See Bodkins, 60 M.J. at 324.

D.  Relief for the Due Process Violation.

Where we find constitutional error, we grant relief unless this court is convinced beyond a reasonable doubt that the constitutional error is harmless.  See United States v. Kreutzer, 61 M.J. 293, 298 (C.A.A.F. 2005) (citing Chapman, 386 U.S. at 24).  The government bears the burden of demonstrating that a constitutional error is harmless beyond a reasonable doubt.  United States v. Cendejas, 62 M.J. 334, 337 (C.A.A.F. 2006) (citing United States v. Simmons, 59 M.J. 485, 489 (C.A.A.F. 2004)); United States v. Grooters, 39 M.J. 269, 273 (C.M.A. 1994) (quoting Arizona v. Fulminante, 499 U.S. 279, 296 (1991)).  We apply a de novo standard of review to the question of harmlessness beyond a reasonable doubt.  Cendejas, 62 M.J. at

24

337; Kreutzer, 61 M.J. at 299; United States v. Grijalva, 55

M.J. 223, 228 (C.A.A.F. 2001) (citing 2 Steven Childress &

Martha Davis, Federal Standards of Review § 7.03, at 7-10 (3d

ed. 1999)).  Where we cannot say beyond a reasonable doubt that

deprivation of the due process right to a speedy review and

appeal is harmless, we must consider what relief, if any, to

afford.  See Jones, 61 M.J. at 86.

Considering the totality of the circumstances in this case,

we cannot be confident beyond a reasonable doubt that this delay

has been harmless.  Although we do not presume prejudice based

on the length of the delay alone, we are mindful of the

egregious delay in this case and the adverse impact such delays

have upon the public perception of fairness in the military

justice system.

More importantly, had Toohey not waited roughly six years

before the lower court rendered its decision, this court could

have conducted its review and returned the case to the lower

court for a proper review under Article 66(c), UCMJ, in time for

the lower court to afford Toohey meaningful relief, if

warranted.  However, given the delay, even after determining

that Toohey has a meritorious claim involving appellate error

that warrants remand and a new sentence appropriateness review

under Article 66(c), UCMJ, meaningful options for relief, if

appropriate, are now limited because Toohey has served his adjudged and approved confinement.

Therefore, we conclude that the appellate due process violation is not harmless beyond a reasonable doubt and Toohey is entitled to consideration of relief for the due process violation. Because we are returning this case to the Court of Criminal Appeals, we will not attempt to craft any relief ourselves and we leave that determination to the court below. In Moreno, we provided a non-exclusive range of options as relief for due process, speedy post-trial violations. 63 M.J. at 143. In addition to reviewing the delay in relation to sentence appropriateness, the Court of Criminal Appeals should afford the parties the opportunity to address the issue of meaningful relief in light of the due process violation and the circumstances of this case.

## DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is set aside. The record is returned to the Judge Advocate General for remand to the Court of Criminal Appeals for action not inconsistent with this opinion. After which, Article 67(a), UCMJ, 10 U.S.C. 867(a) (2000), shall apply.

26

United States v. Toohey, No. 05-0127/MC

CRAWFORD, Judge (dissenting):

Once again the majority fails to apply Supreme Court precedent in interpreting the same or a similar statute or rule. See, e.g., United States v. Cary, 62 M.J. 277, 279 (C.A.A.F. 2006) (Crawford, J., concurring in the result) (the Rules of Courts-Martial are based on the Federal Rules of Criminal Procedure and we should follow guidance of our superior court in applying or interpreting rules). Thus, I respectfully dissent from this Court's continuing pattern of ignoring or refusing to follow the precedent of our superior court.

Based on Ohler v. United States, 529 U.S. 753, 760 (2000), and Luce v. United States, 469 U.S. 38, 43 (1984), I would hold that any issue regarding the rebuttal of character evidence for peacefulness by the Government was not preserved for appeal when Appellant did not submit his character evidence mentioned at the time of the motion. This case is similar to Luce, where the Supreme Court held that an appellant who did not testify may not challenge on appeal an in limine ruling as to the admissibility of a prior conviction and its use for impeachment under Fed. R. Evid. 609(a). Luce, 469 U.S. at 43. The appellant in Ohler also lost an in limine motion and sought to take the sting out of a prior conviction by testifying and minimizing the conviction that the judge ruled admissible under Fed. R. Evid. 609. Ohler, 529 U.S. at 755. Again, the Supreme Court held

that the appellant's action in testifying about the prior conviction precluded him from challenging the in limine ruling on the admission of the prior conviction.  Id. at 755.  In Luce, the Supreme Court reasoned that the judge needs to make the ruling in the context of what would happen at trial, otherwise, the record is incomplete, and a "reviewing court is handicapped in any effort to rule on the subtle evidentiary questions outside a factual context."  Luce, 469 U.S. at 41.

An appellate court has no way of knowing whether the government would actually seek to introduce such evidence if its case were strong.  The government may elect not to use arguably inadmissible evidence.  As the case here now stands, this Court is encouraging defense counsel to "create" appellate error, even when the defense may not want to admit the evidence.

Additionally, I respectfully dissent from the majority's "find[ing of an] unreasonable lengthy delay."  See United States v. Moreno, 63 M.J. 129, 144 (C.A.A.F. 2006) (Crawford, J., concurring in part and dissenting in part).

2