# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Charles D. TAYLOR, Jr.
### Chief Intelligence Specialist (E-7), U.S. Coast Guard

### CGCMSP 25020
### Docket No. 1503

### 04 November 2024

Special court-martial sentence adjudged on 23 February 2022.

| | |
|---|---|
| Military Judge: | LCDR Philip A. Jones, USCG |
| Appellate Defense Counsel: | LCDR Jennifer S. Saviano, USCG |
| Appellate Government Counsel: | LT Christopher J Hamersky, USCG |

### BEFORE
### McCLELLAND, BRUBAKER & MANNION
Appellate Military Judges

McCLELLAND, Chief Judge:

A special court-martial consisting of a military judge alone under Article 16(c)(2), Uniform Code of Military Justice (UCMJ), convicted Appellant, consistent with his pleas entered in accordance with a plea agreement, of one specification of failure to obey a lawful general regulation, in violation of Article 92, UCMJ. Appellant was sentenced to reduction to E-5 and restriction for 30 days. The convening authority disapproved the restriction,[1] leaving only the reduction to E-5. Judgment was entered accordingly.

---

[1] The language of the Convening Authority's Action is: "I approve the request made . . . to commute the sentence of 30 days of restriction to Training Center Yorktown." This language reflects the language of the defense request made under Article 38(c), UCMJ, and Rule for Courts-Martial 1106. "Commute" in the context of a judicial sentence means to reduce to a lesser sentence. On its face, the language does not indicate what lesser sentence is intended. It is apparent from the request as a whole that "commute" was intended to mean "disapprove." Consistent with this, it is inferable that the convening authority intended to disapprove the restriction; and likewise consistent, the Entry of Judgment renders the sentence as reduction to E-5.

Before this Court, Appellant has assigned as error that Appellant's due process right to timely appellate review was violated when the government delayed providing notice of his right to appeal and ultimately took more than a year to transmit his record of trial to this court. The delay is largely attributable to the loss of the record of trial.

## Post-Trial Delay: Due Process

Appellant asserts his right to due process was violated because 460 days elapsed from the date he had the right of direct appeal until his record of trial was transmitted to this Court, including 373 days that are attributable to the Government. We disagree.

Appellant's trial took place on 23 February 2022. He was not entitled to appeal under Article 66 as it existed at that time, although he had certain rights under Article 69. However, on 23 December 2022, Article 66 was changed to allow direct appeal of any finding of guilty, regardless of the sentence. Article 66(b)(1), UCMJ.

Our starting point to evaluate whether post-trial delay violates the Constitution's Due Process Clause is *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). First, we determine whether the post-trial delay is facially unreasonable. *Id.* at 136. *Moreno* established standards for determining whether delay is facially unreasonable, which were updated in *United States v. Tucker*, 82 M.J. 553 (C.G. Ct. Crim. App. 2022). However, those standards do not apply to a case, such as this one, appealed under Article 66(b)(1), UCMJ. *United States v. Chock*, 84 M.J. 578 (C.G. Ct. Crim. App. 2024). We are left to "conduct a case-by-case analysis to determine if a given delay is facially unreasonable." *Moreno*, 63 M.J. at 136.

If there is facially unreasonable delay, we conduct a full analysis of whether a due process violation occurred by weighing the "*Barker*" factors: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice. *Moreno*, 63 M.J. at 135 (citing *Barker v. Wingo,* 407 U.S. 514, 530 (1972)). "No single factor is dispositive, and absence of a given factor does not prevent finding a due process violation." *United States v. Anderson*, 82 M.J. 82, 86 (C.A.A.F. 2022). In the absence of prejudice, a due process violation will be found "only when, in balancing the other three factors,

the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Finally, if we conclude there was a due process violation, we must grant relief unless we are convinced beyond a reasonable doubt that the error is harmless. *Id*. at 363 (C.A.A.F. 2006).

"We may, however, dispose of a claimed due process violation by 'assuming error and proceeding directly to the conclusion that any error was harmless.'" *United States v. Mieres*, 84 M.J. 682, 688 (C.G. Ct. Crim. App. 2024) (quoting *United States v. Allison*, 63 M.J. 365, 370–71 (C.A.A.F. 2006)). Appellant concedes that he has suffered no cognizable prejudice. As we did in *Mieres*, considering the totality of the circumstances, we conclude that even if there was a due process violation, it was harmless beyond a reasonable doubt.

We note, too, that although Appellant invokes *Toohey* and asserts that the "dilatory processing of [his] case is so egregious as to negatively impact the public's perception . . . of the military justice system," Appellant's Brief at 15, the 347 days from the date his right to appeal accrued to the date he was given notice of his right to appeal is less than half the 790 days in *Toohey* from date the right to automatic appeal accrued (sentencing) to date the record arrived at the appellate review activity. *Toohey v. United States*, 60 M.J. 100, 100 (C.A.A.F. 2004). In *Toohey*, that delay in preparing, acting on and transmitting the record, combined with the delay in rendering the appellate decision, for a total of 2240 days, was held to be egregious and a denial of due process. *United States v. Toohey*, 63 M.J. at 362. We do not view the delay in this case as egregious.

## Post-Trial Delay: Article 66(d)(2)

We turn now to whether we should grant relief under Article 66(d)(2), UCMJ, and *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002). Even in the absence of a due process violation, this Court may grant appropriate relief if an appellant demonstrates "excessive delay in the processing of the court-martial after the judgment was entered into the record . . . ." Art. 66(d)(2), UCMJ.

The following paragraph is based on affidavits, attached to the record pursuant to Government motion, from an officer who was in the Coast Guard Office of Military Justice between July 2021 and June 2023 and from a paralegal specialist at the Office of the Chief Prosecutor (formerly the Legal Services Command). The officer describes implementation of the 23 December 2022 statutory change resulting in Appellant's right of direct appeal, and the actions taken concerning Appellant's record of trial. The paralegal specialist describes the actions taken by personnel at her office to reconstitute the record of trial.

In early March 2023, it was noted in the Office of Military Justice that the physical record of trial of this case was missing, although there was an electronic copy of it. Efforts to search for the missing record began. Meanwhile, the Coast Guard had initially considered that the statutory change did not apply to already-completed trials, but that interpretation evolved, and on 22 March 2023, it was decided that cases like Appellant's were entitled to the right of direct appeal. On 25 April 2023, it was decided that the missing record of trial should be reconstituted, which would entail affidavits from various persons involved in prosecution of the case, authenticating their signatures on documents in the record of trial that are required to be original signatures. On 25 August 2023, actions were taken that resulted in receipt of the affidavits three days later. The military judge received the record of trial for verification on 26 September 2023.

The military judge's verification in the record of trial is dated 30 November 2023. Appellant was notified of his right to appeal by letter dated 5 December 2023.

The delay from the date of the statutory change until it was decided that cases like Appellant's were entitled to the right of direct appeal, 89 days, was not dilatory under the circumstances. *Mieres*, 84 M.J. at 689. It appears from the information provided that during the period of 25 April to 25 August 2023, the three-day task of obtaining affidavits was poorly managed at best; it was not accomplished. This surely bespeaks a lack of institutional diligence.

The resulting delay was unreasonable. The record contains evidence of many other missteps in the post-trial process, but this four-month delay by itself warrants some relief.[2]

We will disapprove reduction in pay grade below E-6.

## Decision

We determine that the findings are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty are affirmed. Only so much of the sentence as provides for reduction to E-6 is affirmed.

Judges BRUBAKER and MANNION concur.



For the Court,

Sarah P. Valdes
Clerk of the Court

---

[2] Appellant fulminates about a Coast Guard "trend" of "fail[ure] to exercise due diligence in post-trial processing" that "spans over a half-century." Appellant's Brief at 17. Appellant therefore urges that we dismiss the charge to "hold the Government accountable for failing to give sufficient urgency and attention to detail to the post-trial processing of Appellant's case, a known error that should have been resolved decades ago." *Id*. at 22. The idea of a trend is faulty; this type of failure is recurring, not continuous. Administration of justice, like administration of most other significant matters, requires constant effort, and is forever subject to the possibility of poor management in the face of competing demands. This is especially true in the military, with its constant personnel turnover. We have repeatedly granted relief under Article 66(d)(2) for post-trial delay, confirming our continuing disapproval of the lack of diligence whenever it appears. However, the notion that we can cause the government to suddenly and permanently bring its performance up to an acceptable level by levying a draconian remedy (that would be a windfall to the appellant) is fanciful.