# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

---

**No. ACM 23004**

---

**UNITED STATES**
*Appellee*

**v.**

**Tyler B. EHLY**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

---

Appeal from the United States Air Force Trial Judiciary[1]

Decided 8 December 2025

---

*Military Judge*: Thomas A. Smith.

*Sentence*: Sentence adjudged on 13 September 2022 by SpCM convened at Ellsworth Air Force Base, South Dakota. Sentence entered by military judge on 7 November 2022: Confinement for 30 days, reduction to E-6, and a reprimand.

*For Appellant*: Major Trevor N. Ward, USAF.

*For Appellee*: Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Kate E. Lee, USAF; Major Jocelyn Q. Wright, USAF; Captain Deyana Unis, USAF; Mary Ellen Payne, Esquire.

Before DOUGLAS, MASON, and ORTIZ, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Senior Judge DOUGLAS and Judge ORTIZ joined.

---

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A). *See Manual for Courts-Martial*, *United States* (2024 ed.).

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

MASON, Judge:

A military judge sitting as a special court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one specification of disorderly conduct in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[2] Per the plea agreement, the convening authority withdrew and dismissed with prejudice three specifications of domestic violence, in violation of Article 128b, UCMJ, 10 U.S.C. § 928b. The military judge sentenced Appellant to confinement for 30 days, a reduction to the grade of E-6, and a reprimand. The convening authority took no action on the findings and the sentence, but provided the reprimand language.

Appellant raises two issues on appeal that we have reworded: (1) whether his sentence was inappropriately severe; and (2) whether he is entitled to sentencing relief for post-trial delay under Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2). We have also identified an additional issue, not raised by Appellant, that was identified during this court's Article 66(d), UCMJ, review: (3) whether Appellant is entitled to relief for facially unreasonable appellate delay in accordance with *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006).

On review, we find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

The basis for the charge and specification at issue in this case revolves around a domestic dispute that occurred between Appellant and his fiancée, JS, at Appellant's house in Rapid City, South Dakota. While Appellant was consuming alcohol during the day, Appellant and JS engaged in a verbal argument that would eventually lead to a physical altercation outside of Appellant's house. According to the stipulation of fact, at some point, Appellant threw JS's possessions on the lawn, breaking a flowerpot. Appellant continued to escalate the argument to the point where JS fell down.

---

[2] Unless otherwise noted, all references in this opinion to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

During the course of her argument with Appellant, JS contacted her friend, TB, to pick her up from Appellant's house. TB, accompanied by her 9-year-old child, drove to Appellant's house and witnessed the events that occurred outside of Appellant's home. At some point, TB intervened in the altercation, helped JS off the ground and into TB's car, and drove away with JS and TB's child. The stipulation of fact includes an email message sent by TB to civilian authorities wherein she described her account of the events and included descriptions of JS's emotional state during and after the altercation.

## II. DISCUSSION

### A. Sentence Severity

Appellant argues that his sentence to 30 days of confinement and reduction to the grade of E-6 was inappropriately severe in light of the nature of the offense and his "stellar Air Force career." In particular, Appellant argues that his actions did not result in the witnesses suffering harm or lasting impact and that his post-incident conduct demonstrates his "contrition and rehabilitative potential," highlighting his "impeccable" military record of almost 20 years.

#### 1. Law

This court reviews issues of sentence appropriateness de novo. *United States v. Guinn*, 81 M.J. 195, 199 (C.A.A.F. 2021). We may affirm only so much of the sentence as we find correct in law and fact. Article 66(d), UCMJ.

"We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Although the Courts of Criminal Appeals (CCAs) are empowered to "do justice" we are not authorized to grant mercy. *Guinn*, 81 M.J. at 203 (citation omitted). While we have significant discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *See United States v. Nerad*, 69 M.J. 138, 148 (C.A.A.F. 2010).

When conducting our review, we not only consider the appropriateness of the entire sentence, but also "must consider the appropriateness of each segment of a segmented sentence." *United States v. Flores*, 84 M.J 277, 281 (C.A.A.F. 2024).

#### 2. Analysis

After conducting a review of the entire record, we find Appellant's sentence is appropriate. We have considered that Appellant presented an unsworn statement describing his military career, his relationship with JS, his family

life, and his rehabilitative potential. We have also considered Appellant's entire record of service, and all matters contained in the record, including Appellant's enlisted performance reports.

The seriousness of Appellant's offense warrants the adjudged punishment of confinement for 30 days and a reduction to the grade of E-6. Appellant admitted that the argument was precipitated by his drinking during the day, which escalated into an argument that led to the public alteration. Appellant's actions included publicly throwing JS's possessions in the front yard and escalating the argument in front of witnesses that resulted in JS falling down and breaking a flowerpot. Appellant also admitted that his behavior was service-discrediting and that his actions were witnessed by TB and her daughter. Contrary to Appellant's assertions, the record reflects that Appellant's actions did have a direct negative impact on the witnesses and the victim. In particular, TB's email described her daughter's "panick[ed]" reaction to witnessing the altercation and JS's agitated emotional state throughout the altercation. Considering the nature and seriousness of the offense, Appellant's particular circumstances, all the matters he submitted in extenuation and mitigation, and all other matters contained in the record of trial, we do not find Appellant's sentence to be inappropriately severe.

## B. Post-Trial and Appellate Delay

Appellant argues that he is entitled to relief for unreasonable post-trial delay under Article 66(d)(2), UCMJ, focusing on three discrete timeframes: (1) the period from the convening authority's decision on action until docketing by the court; (2) the period of time required to notify him of his right to submit a direct appeal to the court; and (3) the period of time required to prepare the verbatim transcript. Additionally, we consider whether Appellant is entitled to relief for a facially unreasonable appellate delay. We decline to grant relief in this case for any of these reasons.

### 1. Additional Background

The military judge sentenced Appellant on 13 September 2022 and entered judgment on 7 November 2022. On 23 December 2022, Congress amended Articles 66 and 69, UCMJ, 10 U.S.C. §§ 866, 869, to expand the jurisdiction of service CCAs to any judgment of a special or general court-martial, irrespective of sentence, that included a finding of guilty. *See* National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 544, 136 Stat. 2395, 2582–84 (23 Dec. 2022) (FY23 NDAA).

On 3 January 2024, the Government provided Appellant the required notice, by mail, of his right to appeal within 90 days.

On 2 April 2024, Appellant filed a notice of appeal pursuant to Article 66(b)(1)A). UCMJ, and the court docketed Appellant's case that same day. On

24 July 2024, the Government transmitted a verbatim transcript to this court. Appellant filed nine enlargements of time and filed his brief on 8 July 2025—349 days after his case was docketed.

### 2. Law

We review de novo whether an appellant is entitled to relief for post-trial delay. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citations omitted) (citing *Moreno*, 63 M.J. at 135).

In *Moreno,* the United States Court of Appeals for the Armed Forces (CAAF) identified thresholds for facially unreasonable delay during three particular segments of the post-trial and appellate process. 63 M.J. at 141–43 (citations omitted). Specifically, our superior court established a presumption of facially unreasonable delay where: (1) the convening authority did not take action within 120 days of the completion of trial, (2) the record was not docketed with the CCA within 30 days of the convening authority's action, or (3) the CCA did not render a decision within 18 months of docketing. *Id*. at 142.

In *Livak,* this court recognized that "the specific requirement in *Moreno* which called for docketing to occur within 30 days of action no longer helps us determine an unreasonable delay under the new procedural rules." 80 M.J. at 633. Accordingly, this court established an aggregated sentence-to-docketing 150-day threshold for facially unreasonable delay in cases that were referred to trial on or after 1 January 2019. *Id*. (citation omitted).

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *See also Moreno*, 63 M.J. at 135 (citations omitted) (holding that "[w]hile *Barker* addressed speedy trial issues in a pretrial . . . context, its four factor analysis has been broadly adopted for reviewing post-trial delay due process claims"). In *Barker*, the United States Supreme Court also identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review, which CAAF explained in *Moreno*: (1) oppressive incarceration; (2) "particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *See Moreno,* 63 M.J. at 138–40 (citations omitted). "Of these, the most serious is the last [type], because the inability of a defendant adequately [to] prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Additionally, where an appellant has not shown prejudice from the delay, we cannot find a due process violation unless the delay is so egregious as to

"adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Independent of any due process violation, this court may provide appropriate relief where there is "excessive delay in the processing of the court-martial after the judgment was entered into the record." *United States v. Valentin-Andino*, 85 M.J. 361, 364 (C.A.A.F. 2025) (citing Article 66(d)(2), UCMJ. If a CCA "decides relief is warranted for excessive post-trial delay under Article 66(d)(2), [UCMJ,] that relief must be 'appropriate,' meaning it must be suitable considering the facts and circumstances surrounding that case." *Id.* at 367. "This does not require a [CCA] to provide relief that is objectively meaningful, and it does not obligate a [CCA] to explain its reasoning regarding the relief it does provide." *Id.*

### 3. Analysis

Initially, we note that Appellant's arguments focus on his entitlement to sentencing relief under Article 66(d)(2), UCMJ, yet reference facially unreasonable time threshold standards established in *Moreno*. We therefore will address the post-trial delay under the relevant due process considerations as well as entitlement to relief under Article 66(d)(2), UCMJ, for excessive post-trial delay.

#### a. Sentence to Docketing

Appellant first argues that he was subjected to unreasonable post-trial delay because his case was not docketed within 30 days of the convening authority's decision on action in light of the facial unreasonable threshold standard established in *Moreno*.

We note that Appellant has provided no explanation for why the 30-day *Moreno* facial threshold is applicable to his case. This court has previously found that the changes to the procedural rules have overtaken the 30-day threshold from docketing to action but instead adopted a 150-day threshold from sentencing to docketing. *Livak*, 80 M.J. at 633. Moreover, this court has found that the 150-day *Livak* threshold does not apply to direct appeals. *United States v. Boren*, No. ACM 40296 (f rev), 2025 CCA LEXIS 103, at *47 (A.F. Ct. Crim. App. 19 Mar. 2025) (unpub. op.). This court has also expressly declined to establish a specific time frame for a presumptive facially unreasonable delay to cover the period from sentence to docketing in direct appeal cases. *United States v. Adams*, No. ACM 22018, 2025 CCA LEXIS 343, at *13–14 (A.F. Ct. Crim. App. 29 Jul. 2025) (unpub. op.). Thus, there is no established facially unreasonable threshold for direct appeals for pre-docketing delay that triggers a *Barker* due process analysis.

We find that the relevant time period here is from Appellant's filing of his notice of appeal to the docketing of his case. *Boren*, 2025 CCA LEXIS 103, at

*48 (finding no unreasonable delay in docketing a direct appeal when docketing occurred two days after the notice of appeal was filed). In the present case, Appellant's case was docketed the same day as his filing of the notice of appeal. Thus, we do not find any excessive delay in docketing this case that warrants relief.

### b. Delay From Statutory Change to Notification of Appellate Rights

Appellant next challenges the Government's delay in notifying him of his right to appeal. In this case, Appellant was mailed a notice advising him of his right to submit a direct appeal dated 3 January 2024—376 days after Congress's expansion of direct appeal jurisdiction in the FY23 NDAA. In light of the extended time frame from the statutory change to the mailing of the notice of Appellant's right to submit a direct appeal, we find that the *Barker* analysis has been triggered. *See Adams*, unpub. op. at *14–15 (finding delays in notification over one year demonstrated a facially unreasonable delay apart from *Livak* and *Moreno* that triggered a *Barker* due process analysis).

In analyzing the *Barker* factors we make the following findings: (1) the length of the delay is excessive, as it took over a year for the Government to notify Appellant of his new right to appeal; (2) the Government's reasons for some delay do not justify a year-long delay, as anticipating this new legislation and issuing timely guidance was within the Government's control; and (3) Appellant asserted his right to appeal within a reasonable time after being notified.

However, we do not find Appellant suffered any cognizable prejudice from the delay as described in *Barker*. Appellant was not subject to oppressive incarceration—his 30 days of confinement was served even before the statutory change gave him the right to submit a direct appeal. There is no evidence, nor does Appellant allege, that he suffered particularized anxiety or concern related to the delay in notification. In addition, any delay in this case did not harm Appellant's ability to present an appeal, especially given the Appellant's nine requests for enlargement of time in filing his own appellate brief. Finally, absent a finding of prejudice to Appellant under the fourth *Barker* factor, Appellant is not entitled to relief for a due process violation because we find that the delay was not so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362.

### c. Delay in Transmitting the Verbatim Transcript

Next, we address Appellant's argument that the period from sentencing to transmission of the record of trial to the court constituted unreasonable post-

trial delay. We find no unreasonable delay in the transmission of the verbatim transcript in this case.

Appellant was sentenced on 13 September 2022. He submitted his notice of appeal, and his case was docketed on the same day—2 April 2024. The court reporter was detailed to produce a verbatim transcript on 17 April 2024, and the transcript was completed and certified on 22 July 2024. This court received the verbatim transcript two days later on 24 July 2024—a period of 113 days from docketing.

Contrary to Appellant's assertions, we find that the relevant consideration for unreasonable delay in transmission of the verbatim transcript in this case is the period of time from Appellant's submission of his notice of appeal to the transmittal of the verbatim transcript to this court. *United States v. Gonzalez*, No. ACM 24001, 2025 CCA LEXIS 412, at * 20–21 (A.F. Ct. Crim. App. 29 Aug. 2025) (unpub. op.) (finding that 129 days between docketing and receipt of the verbatim transcript was not an unreasonable delay). At the time of Appellant's court-martial, there was no requirement for the Government to produce a verbatim transcript, and it was only the docketing of Appellant's direct appeal that triggered the need to produce a verbatim transcript to assist the parties in presenting their arguments to the court. *See* Department of the Air Force Manual (DAFMAN) 51-203, *Records of Trial*, ¶ 11.1.1 (21 Apr. 2021). Thus, we will only consider the 113 days from docketing to transmission of the verbatim transcript for purposes of post-trial delay.

We do not find that the 113 days between docketing and the transmission of the verbatim transcript to be an unreasonable delay. The court reporter chronology reflects steady, forward progression in producing the transcript and any delays reflected in the chronology were not excessive, unreasonable, or unusual. Therefore, under the circumstances, a *Barker* due process analysis does not apply, and just under four months is not an unreasonable or excessive delay.

### d. Facially Unreasonable Appellate Delay

Over 18 months have elapsed since Appellant's record of trial was originally docketed with this court. Therefore, under *Moreno*, there is a facially unreasonable delay. Accordingly, we have considered the *Barker* factors and find no due process violation. Appellant has not specifically alleged cognizable prejudice from appellate delay. We note that Appellant has already served his sentence to confinement even before jurisdictional changes of the FY23 NDAA, and there is no indication or evidence of oppressive incarceration. We do not perceive any particularized anxiety or concern caused by the appellate delay—indeed, Appellant sought an additional 349 days of delay through nine enlargements of time. Moreover, our review has not occasioned any potential

rehearing, nor do we perceive any particular reason why any further appeal might be impaired.

Absent prejudice, we similarly find the post-docketing delay involved in Appellant's case has not been so egregious as to adversely affect the public perception of the military justice system. The majority of the delay was the result of Appellant's requests for enlargements of time in which to file his assignments of error. We find no egregious delay and no violation of Appellant's due process rights. *See Toohey*, 63 M.J. at 362.

### *e. Relief in Absence of Due Process Violation*

Finally, we address Appellant's argument that the post-trial delay warrants relief under Article 66(d)(2), UCMJ, applying a proposed new test for determining appropriate relief. We decline Appellant's invitation to establish a new test for evaluating appropriate relief for excessive post-trial delay under Article 66(d)(2), UCMJ. Rather, we have carefully considered the length and reasons for delay in this case and Appellant's argument that he has suffered harm by the delay. We find that, under the circumstances, he is not entitled to relief. Thus, because we have determined that relief is not warranted, there is no need to address the test for appropriateness of the relief under Article 66(d)(2), UCMJ. *See Valentin-Andino*, 85 M.J. at 367 (finding that the question of appropriate relief is considered after the CCA decides that relief is warranted).

### III. CONCLUSION

The findings are correct in law. Article 66(d), UCMJ, 10 U.S.C. § 866(d). *Manual for Courts-Martial, United States* (2024 ed.). In addition, the sentence as entered is correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court