# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 22018**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Grayson N. ADAMS**
Airman (E-2), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary[1]

Decided 29 July 2025

———————————

*Military Judge*: Shad R. Kidd.

*Sentence*: Sentence adjudged 25 October 2021 by SpCM convened at Barksdale Air Force Base, Louisiana. Sentence entered by military judge on 24 November 2021: Confinement for 60 days, forfeiture of $1000.00 pay per month for three months, and reduction to E-1.

*For Appellant*: Captain Michael J. Bruzik, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Lieutenant Colonel Catherine K.M. Wray, USAF; Major Vanessa Bairos, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, MASON, and KEARLEY, *Appellate Military Judges*.

Judge KEARLEY delivered the opinion of the court, in which Chief Judge JOHNSON and Judge MASON joined.

———————————

---

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A), *Manual for Courts-Martial, United States* (2024 ed.).

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

KEARLEY, Judge:

A special court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas, of two specifications of dereliction of duty in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892, and two specifications of unlawful use of a controlled substance, and one specification of unlawful possession of a controlled substance in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.[2] The military judge sentenced Appellant to confinement for 60 days, forfeiture of $1,000.00 pay per month for three months, and reduction to the grade of E-1. The convening authority took no action on the findings or sentence.

Appellant raises four issues on appeal, which we have reworded: (1) whether Appellant's sentence is inappropriately severe; (2) whether this case should be remanded for correction of the record of trial when a court reporter who was not present at the original proceeding transcribed and certified the verbatim transcript; (3) whether Appellant is due relief because of the Government's post-trial delay; and (4) whether the entry of judgment erroneously subjects Appellant to a restriction on firearm ownership in violation of his Second Amendment[3] right to bear arms.

We have carefully considered issue (2) and conclude it warrants neither discussion nor relief. *See United States v. Guinn*, 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)). We have also carefully considered issue (4) and conclude it warrants neither discussion nor relief. *See United States v. Johnson*, __ M.J. __. No. 24-0004, 2025 CAAF LEXIS 499, at *8–14 (C.A.A.F. 24 Jun. 2025); *Matias*, 25 M.J. at 361. As to the remaining assignments of error, we find no error that materially prejudiced Appellant's rights, and we affirm the findings and sentence.

## I. BACKGROUND

At the time of his offenses, Appellant was a security forces member, living on base in the dormitory at Barksdale Air Force Base, Louisiana. In the early morning hours of 8 November 2020, the base security forces received word that someone may have been shot in the dorms. A second dispatch elaborated that

—————————

[2] Unless otherwise noted, all references in this opinion to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] U.S. CONST. amend. II.

the gunshot was an attempted suicide. Two security forces members, Technical Sergeant (TSgt) MH and TSgt EH, responded. While they did not hear any gunshots, they heard shouting from Appellant's dorm room and proceeded in that direction. They directed Appellant to come out with his hands up. Appellant complied with their orders and allowed them to apprehend him. The two security forces members noticed shattered glass on Appellant's floor and blood on his hands. After clearing the room, TSgt MH asked Appellant if they could search the dorm room. Appellant consented to the search.

Upon searching Appellant's room, the security forces members did not find evidence of a gun being fired, but they found a loaded AK-47 rifle with multiple clips of ammunition and a handgun with multiple magazines of ammunition. Appellant had not registered these privately-owned firearms with the security forces armory on base. He also failed to store them in the armory despite knowing that storage of guns or ammunition within the dorms was prohibited by installation regulations.

During the search of Appellant's room, security forces personnel found two pills of methamphetamine in a plastic bag, along with a plastic card and a plastic straw, a mirror, and a homemade smoking device. According to the security forces personnel, Appellant appeared to be under the effects of a substance due to dilated pupils, restlessness, and short-term memory loss.

During his guilty plea inquiry, Appellant admitted to wrongfully possessing and using methamphetamine and wrongfully using hydrocodone. He also admitted to willful dereliction of duty for failure to register and store his firearms properly.

## II. DISCUSSION

### A. Sentence Severity

Appellant contends his sentence of confinement for 60 days, forfeiture of $1000.00 pay per month for three months, and reduction to E-1 is inappropriately severe because it did not fully account for the mitigating circumstances behind the underlying conduct. Appellant argues that the record of trial showed he was a "young Airman struggling with life away from his structured upbringing and dealing with medical issues." Appellant specifically takes issue with the "hefty forfeitures" that were adjudged against him and highlights how cooperative he was throughout his interactions with security forces on the night of his apprehension.

### 1. Additional Background

During sentencing, Appellant provided an unsworn statement where he described his sheltered upbringing and his desire to join the Air Force to pursue a career in law enforcement. Appellant shared that he was overtaken with temptations that he struggled to manage while being away from home for the first time. He also explained that he had been dealing with medical issues that required him to take prescription medications that interfered with his judgment. He emphasized that he had no intention to hurt anyone with the firearms in his room and he merely possessed an interest in "unique guns." Appellant also provided the court with a character letter, photos of him with his friends and family, and a written unsworn statement.

During the sentencing argument, trial counsel referred to the drugs and guns in Appellant's dorm room as a "recipe for disaster," and suggested the events represented a detriment to safety.

### 2. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). Our authority "reflects the unique history and attributes of the military justice system" including "considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved based on the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). By this standard, we may overturn a sentence that is inappropriately severe. *See United States v. Schauer*, 83 M.J. 575, 580 (A.F. Ct. Crim. App. 2023) (holding the appellant's record of service, to include four overseas deployments and his personal circumstances, and the record of trial, were not enough to conclude the adjudged sentence was inappropriately severe), *rev. denied*, 83 M.J. 461 (C.A.A.F. 2023). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *See United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

### 3. Analysis

The maximum sentence Appellant could receive for his offenses, by virtue of the forum, included a bad-conduct discharge, confinement for one year, forfeiture of two-third's pay per month for 12 months, and reduction to the grade of E-1. However, Appellant entered into a plea agreement with the convening

authority that capped his term of confinement for each specification to 150 days, with each term running concurrently. Appellant received concurrent sentences to confinement of between 10 and 60 days for each specification, in addition to forfeiture of $1,000.00 pay per month for three months, and reduction to the grade of E-1.

We do not find Appellant's sentence is inappropriately severe. In particular, the nature and seriousness of Appellant's crimes support the sentence imposed. Appellant kept three categories of unlawful items in his dorm room on base: guns, ammunition, and controlled substances. He blatantly ignored base policies to disclose privately owned weapons and store such weapons at the armory. He wrongfully and illegally possessed and used methamphetamines and wrongfully used hydrocodone.

The record of trial shows Appellant took responsibility for his crimes by pleading guilty to the offenses with which he was convicted, rather than contesting them at trial, and this was a factor the military judge could consider as a positive indicator of rehabilitation potential. However, giving individualized consideration to Appellant, the nature and seriousness of his offenses, Appellant's record of service, and all other matters contained in the record of trial, we conclude Appellant's sentence is not inappropriately severe.

## B. Post-Trial Delay

Appellant seeks relief due to what he characterizes as the Government's "excessive delay" in processing his court-martial after the entry of judgment due to the Government's "untimely provision" of the record of trial (ROT) and verbatim transcript. Appellant asks us to provide relief by setting aside his forfeitures. We find no relief is warranted.

### 1. Additional Background

Appellant was sentenced on 25 October 2021. At that time, Appellant's sentence did not meet the jurisdictional requirements for direct appeal to this court. On 23 December 2022, Congress amended Articles 66 and 69, UCMJ, 10 U.S.C. §§ 866, 869. *See* The National Defense Authorization Act for Fiscal Year 2023 (FY23 NDAA), Pub. L. No. 117–263, § 544, 136 Stat. 2395, 2582–84 (23 Dec. 2022). As amended, Article 66(b)(1)(A), UCMJ, expanded Court of Criminal Appeals (CCA) jurisdiction to any judgment of a special or general court-martial, irrespective of sentence, that included a finding of guilty. 10 U.S.C. § 866(b)(1)(A) (*Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*)).

On 20 December 2023—361 days after the enactment of Article 66(b)(1)(A), UCMJ (2024 *MCM*)—the Government notified Appellant of his right to direct appeal before this court along with a copy of a summarized record of trial.

5

On 14 March 2024, Appellant filed his notice of appeal, and on 15 March 2024, this court docketed his case but ordered the Government to forward a copy of the record of trial to the court as it had not been received yet. The record of trial, with a verbatim transcript, was provided to this court on 26 July 2024.

Subsequently, Appellant requested and received seven enlargements of time. Appellant ultimately submitted his brief on 16 April 2025. On 16 May 2025, the Government submitted its answer to Appellant's assignments of error. On 23 May 2025, Appellant filed his reply brief.

**2. Law**

We review de novo whether an appellant is entitled to relief for post-trial delay. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citing *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006)).

In *Moreno,* the United States Court of Appeals for the Armed Forces (CAAF) identified thresholds for facially unreasonable delay during three particular segments of the post-trial and appellate process. 63 M.J. at 141–43 (citations and footnotes omitted). Specifically, our superior court established a presumption of facially unreasonable delay where: (1) the convening authority did not take action within 120 days of the completion of trial, (2) the record was not docketed with the CCA within 30 days of the convening authority's action, or (3) the CCA did not render a decision within 18 months of docketing. *Id.* at 142.

In *Livak,* this court recognized that "the specific requirement in *Moreno* which called for docketing to occur within 30 days of action no longer helps us determine an unreasonable delay under the new procedural rules." 80 M.J. at 633. Accordingly, this court established an aggregated sentence-to-docketing 150-day threshold for facially unreasonable delay in cases that were referred to trial on or after 1 January 2019. *Id.* (citation omitted). However, in light of subsequent statutory changes, this court recently found the 150-day threshold established in *Livak* does not apply to direct appeals, such as Appellant's, that are submitted under the amended Article 66(b)(1)(A), UCMJ, effective 23 December 2023. *See United States v. Boren*, No. ACM 40296 (f rev), 2025 CCA LEXIS 103, at \*47 (A.F. Ct. Crim. App. 19 Mar. 2025) (unpub. op.). This court noted, "[t]hese statutory changes substantially altered the sequence of post-trial events in such [direct appeal] cases" as compared to the mandatory review cases the CAAF contemplated in *Moreno*. *Id.* at 47–48. Therefore, although we acknowledge appellants in such cases still enjoy constitutional due process rights to timely post-trial review, we decline to establish a new specific timeframe for a facially unreasonable delay from sentence-to-docketing in direct appeal cases. Even without a specific timeframe, we can determine if there is a case-specific facially unreasonable delay. *See United States v. Gray,* 2025

CCA LEXIS 122, at *15–17 (A.F. Ct. Crim. App. 24 Mar. 2025) (unpub. op.) (recognizing it is possible an appellant could demonstrate a case-specific facially unreasonable delay outside of *Livak* and *Moreno* that would trigger a *Barker*[4] due process analysis), *rev. denied*, 2025 CAAF LEXIS 498 (C.A.A.F. 24 Jun. 2025).

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). In *Barker*, the Supreme Court also identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations and footnotes omitted). "Of those, the most serious is the last [type], because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Additionally, where an appellant has not shown prejudice from the delay, we cannot find a due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Independent of any due process violation, this court may provide appropriate relief where there is "excessive delay in the processing of the court-martial after the judgment was entered into the record." *United States v. Valentin-Andino*, 85 M.J. 361, 364 (C.A.A.F. 2025) (citing Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2)).

If a CCA decides relief is warranted for excessive post-trial delay under Article 66(d)(2), UCMJ, "that relief must be 'appropriate,' meaning it must be suitable considering the facts and circumstances surrounding that case." *Id.* at 367. "This does not require a [CCA] to provide relief that is objectively meaningful, and it does not obligate a [CCA] to explain its reasoning regarding the relief it does provide." *Id.*

### 3. Analysis

Appellant argues he was subject to excessive delay in two instances. First, Appellant argues that the 361-day delay between the statutory change that allowed Appellant to appeal and the Government providing notice to Appellant

---

[4] *Barker v. Wingo*, 407 U.S. 514 (1972).

of his right to appeal was too great. Second, Appellant argues that the delay of 133 days between this court docketing the case and our receipt of the record of trial with a verbatim transcript was excessive.[5]

The most significant issue is the first instance of delay because it took the Government almost a full year to notify Appellant of his right to appeal as a result of the new statutory change explained *supra.* In explaining this delay, the Government claims that after the enactment date of the statute allowing for direct appeals, the "Government lacked any guidance to determine which courts-martial qualified from the expanded appellant rights." The Government also argues that the FY23 NDAA failed to include a specific timeframe notification requirement for cases where there was a final judgment under Article 57(c)(2), UCMJ, 10 U.S.C. § 857(c)(2). The Government further stated the delay reflected "the time required to retroactively review courts-martial convictions and notify the applicable service members."

We begin our analysis by restating that we decline to establish a new specific timeframe for a presumptive facially unreasonable delay to cover the period from sentence-to-docketing in direct appeal cases. *See Boren*, unpub. op. at *47 (explaining that the new procedures applicable to direct appeals gives appellants significant control over what post-conviction review process they elect to seek as part of their right to appellate review). However, we considered Appellant's due process rights to speedy appellate review without presuming a facially unreasonable delay to determine whether Appellant demonstrated a case-specific facially unreasonable delay that would trigger a *Barker* due process analysis. *See Gray,* unpub. op. at *15–17 (finding no prejudice to appellant and that the delay was not egregious enough to violate due process or warrant sentence relief in a direct appeal case).

### a. Delay From Statutory Change to Notice of Appeal

We find that the lengthy delay between the statutory change (23 December 2022) and the Government's notice to Appellant of his right to appeal (20 December 2023) is excessive, and that Appellant has demonstrated a facially unreasonable delay apart from *Livak* and *Moreno* that triggers a *Barker* due process analysis. After considering the first three *Barker* factors, we conclude: (1) the length of the delay is excessive, as it took nearly a year for the Government to review prior cases which may be affected by the statutory change and notify

---

[5] Appellant also argues that the ROT received was "still incomplete" because Appellant claims the transcript is "uncertified." However, as stated above, we find this contention is without merit.

Appellant of his new right to appeal;[6] (2) the Government's reasons for some delay were understandable but do not justify a year-long delay, as anticipating this new legislation and issuing timely guidance was within the Government's control; and (3) Appellant asserted his right to appeal within a reasonable time after being notified. *Barker*, 63 M.J. at 135.

As to the fourth *Barker* factor, we do not find Appellant suffered any prejudice. Appellant was not subject to oppressive incarceration because he was confined for 60 days and had completed his confinement prior to the legislative change allowing direct appeals. Appellant has not alleged particularized anxiety or impairment related to the delay in notification of his new right to a direct appeal. In addition, any delay in this case did not harm Appellant's ability to present an appeal, especially given the seven requests for extension of time in filing his own appellate brief. Finally, absent a finding of prejudice to Appellant under the fourth *Barker* factor, Appellant is not entitled to relief for a due process violation because we find that the delay was not so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362.

### b. Delay in Receiving Verbatim Transcript

Next, turning to Appellant's second instance of delay, we do not find the 133 days between docketing with this court and our receipt of a record of trial with a verbatim transcript to be an unreasonable delay. Appellant filed his notice of appeal on 14 March 2024, and this court docketed his case the next day. In this court's docketing order, the court ordered the Government to "forward a copy of the record of trial to the court forthwith." This court received a record of trial on 26 July 2024, with a verbatim transcript. It would take some time to create a verbatim transcript and conduct the necessary routing and certifications. Therefore, under the circumstances, a *Barker* due process analysis does not apply, and just over four months is not a facially unreasonable delay.

### c. Relief in Absence of Due Process Violation

Recognizing our authority under Article 66(d)(2), UCMJ, we have considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation as to Appellant's notice of his right to appeal. We have carefully considered Appellant's argument that he has suffered harm by the delay "impeding his ability to exercise his right to appellate review" and we find that, under the circumstances, he is not entitled to relief.

---

[6] While this delay is excessive, we have no indication of gross indifference or institutional neglect on the part of the Government in processing Appellant's case.

### III. Conclusion

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court