# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 22083**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Daryl A. THOMAS**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary[1]

Decided 29 September 2025

————————————

*Military Judge*: Thomas A. Smith.

*Sentence*: Sentence adjudged 10 August 2022 by SpCM convened at Whiteman Air Force Base, Missouri. Sentence entered by military judge on 7 September 2022: Reduction to E-5, forfeiture of $750.00 pay per month for 12 months, 2 months hard labor without confinement, and a reprimand.

*For Appellant*: Captain Samantha M. Castanien, USAF.

*For Appellee*: Colonel Matthew Talcott, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Kate E. Lee, USAF; Major Jocelyn Q. Wright, USAF; Captain Deyana Unis, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEARLEY, and MCCALL, *Appellate Military Judges*.

Judge KEARLEY delivered the opinion of the court, in which Chief Judge JOHNSON and Judge MCCALL joined.

————————————

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A) (*Manual for Courts-Martial, United States* (2024 ed.)).

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

KEARLEY, Judge:

A special court-martial composed of a military judge alone found Appellant guilty, in accordance with his pleas, of five specifications of wrongful use of a controlled substance (methamphetamine) in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912.[2] A panel of officers sentenced Appellant to reduction to the grade of E-5, forfeiture of $750.00 pay per month for 12 months, two months hard labor without confinement, and a reprimand. The convening authority took no action on the findings or the sentence.

Appellant raises one issue on appeal, which we have rephrased: (1) whether Appellant's sentence including a two-rank reduction is inappropriately severe. We consider an additional issue: (2) whether Appellant is entitled to relief for a presumptively unreasonable post-trial delay.

## I. BACKGROUND[3]

Appellant served 22 years in the United States Air Force. Appellant's record reflects combat service where he "experienced quite a bit of trauma." Appellant was diagnosed with Post-Traumatic Stress Disorder (PTSD) and struggled with basic social activities like going shopping with his family and being in public places. Appellant argues that the "trauma" from a particular assignment "infected [his] dreams" and he would wake up frantically looking for his son.

When Appellant moved on to a new assignment at Whiteman Air Force Base, Missouri, he continued to have bad dreams and tried to cope with PTSD. To help him with his mental state, Appellant poured himself into his workouts and relied on a variety of supplements to get him through his difficulties. He bought some supplements at major retail stores, but others he bought from places he "probably shouldn't have" such as vape shops, a gas station, and places he referred to as "shady." He bought and used pills that were unmarked. He did not know what the pills contained as there was no accompanying documentation with them; however, based on where and how he bought the pills,

————————————

[2] Unless otherwise indicated, all references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Most of the background comes from Appellant's own words during the plea inquiry with the military judge, reflected in the record of trial.

he knew that they could have contained "something [he] should not have been taking."

Appellant deliberately avoided finding out what was in the pills he took.[4] A stranger told Appellant the pills would make him feel better and Appellant trusted him, even though he recognized the stranger's job was to "sell whatever it is they are selling." Appellant further stated that the "pills [he] purchased were marked or advertised as being able to help [him] focus or sleep." He took some of the pills at night to help him sleep and others during the day to help him focus. During the providence inquiry, he admitted to the military judge that at the time he took the pills he was aware that there was a high probability that the substance he took was of a contraband nature.

Appellant explained that after he tested positive for methamphetamine during a random urinalysis, he then tested positive in a second urinalysis and kept being tested under his command's *Bickel* policy until he tested negative.[5] As Appellant began to have positive drug tests, he became convinced the pills "probably . . . contain[ed] methamphetamine." He stopped taking the pills; however, several months later he was "in a lot of pain" and took the pills again because he was "in a dark place" and they made him feel better and "helped [him] cope with [his] pain."

A military judge accepted Appellant's guilty pleas and found him guilty of five specifications of wrongful use of methamphetamine, a controlled substance, in violation of Article 112a, UCMJ. During sentencing, a panel of officer members heard Appellant's statements about his drug abuse by hearing portions of the recorded *Care*[6] inquiry. The panel also heard the mitigating evidence of Appellant's career through three witnesses who testified on Appellant's behalf about the positive impact Appellant made in their lives, and one

---

[4] The military judge explored this concept of deliberate avoidance at trial and explained to Appellant that one may not "willfully and intentionally remain ignorant of a fact important and material to [one's] conduct in order to escape the consequences of criminal law." Appellant confirmed that he still had the requisite knowledge in order to prevent this offense.

[5] According to the record of trial, Appellant's command's *Bickel* policy was that "if [one] test[s] positive, [they] are subject to continued inspection, meaning [they] can continue to be required to take a urinalysis[.]" This process is authorized. *See United States v. Bickel*, 30 M.J. 277, 288 (C.M.A. 1990) (where the second urinalysis was conducted as the result of a policy previously established by the commander for rescreening those individuals who tested positive during a random urinalysis, the follow-on screening was a continuation of the original inspection and therefore did not violate Army directives).

[6] *United States v. Care*, 14 C.M.R. 247 (C.M.A. 1969).

provided details about Appellant's struggles post-deployment. During his unsworn statement, Appellant spoke of his challenges with PTSD and associated nightmares. He asked to have a chance to continue his Air Force career. Appellant's trial defense counsel argued for a sentence involving forfeiture of pay, restriction, and/or hard labor, and argued against confinement or a bad-conduct discharge. The Government did not argue for a reduction in grade but argued only for 30 days of confinement and a bad-conduct discharge.

## II. DISCUSSION

### A. Sentence Severity

#### 1. Additional Background

Appellant argues that with 22 years of service, any rank reduction would force Appellant to separate (or retire) as he would have reached High Year Tenure.[7] Appellant recognizes that this court and the members at Appellant's court-martial cannot consider administrative collateral consequences; however, Appellant claims any reduction was inappropriately severe because of his individual circumstances, his record of service, and the circumstances surrounding his offenses. Appellant asks this court to disapprove the portion of the sentence reducing Appellant to the grade of E-5. We decline to do so.

#### 2. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Although the Courts of Criminal Appeals are empowered to "do justice[ ] with reference to some legal standard," we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203

---

[7] A High Year Tenure is "[a] year point at which the Department of the Air Force determines an enlisted Service member is ineligible for reenlistment and extension due to grade and length of service." *See* Department of the Air Force (DAFI) 36-3203, *Service Retirements*, Attachment 1, *Terms,* at 108 (8 Jul. 2025). A High Year Tenure "is set at the following service points: Senior Airman/Specialist 4 (E-4) at 10 years of service; Staff Sergeant/Sergeant (E-5) at 20 years of service; . . . Master Sergeant (E-7) at 24 years of service . . . ." *See* DAFI 36-3203*,* ¶ 3.10.

(C.A.A.F. 2021) (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)).

### 3. Analysis

Appellant contends his sentence is inappropriately severe. He asserts that at the time of the offenses he was struggling with PTSD from his duties in the military. Appellant argues that "the record does not – and likely could not – reflect the specifics of his responsibilities to include what he saw or what he had to do for this country." Appellant contends that this is not a situation where a servicemember was using methamphetamine at a party just to get high. Instead, Appellant argues his methamphetamine use was the result of "coping mechanisms failing him," and he abused prescription medication to continue serving.[8] He highlights having an excellent service record prior to the use, that he pleaded guilty to the offenses, and that his court-martial took place after eight months of not testing positive.

Based on his guilty pleas alone, Appellant might have been sentenced to a bad-conduct discharge, confinement for 12 months, forfeitures of two-thirds pay per month for 12 months, and reduction to the grade of E-1. Appellant received a sentence of hard labor without confinement for two months, reduction to the grade of E-5, forfeiture of $750.00 of his pay for 12 months, and a reprimand.

Taking into account the mitigating circumstances, we do not find Appellant's sentence inappropriately severe. The members followed the trial defense counsel's recommendations closely. They did not sentence Appellant to confinement nor adjudge a punitive discharge. While neither party recommended a two-rank reduction, this reduction is not overly harsh for a military member who used methamphetamine on multiple occasions and continued to use it even after testing positive. Furthermore, even after Appellant stopped, he started using methamphetamine again because it "helped [him] cope with [his] pain." Additionally, the military judge provided sentencing instructions to the members that made them aware that a punitive discharge would preclude the possibility of retirement and the benefits that flow from retirement, such as receiving retired pay and benefits. Therefore, a two-rank reduction, without a punitive discharge, is not inappropriate under the circumstances.

We have carefully considered Appellant's personal history and characteristics, the nature and seriousness of his offenses, his record of service, and all

---

[8] Appellant took methamphetamines in the pill form. Appellant argues that because methamphetamine can be prescribed in a pill form, his use was more similar to abusing prescription medication than "shooting up meth" or "smoking meth at a party just to get high."

other matters contained in the record of trial. *See Anderson*, 67 M.J. at 705. We conclude Appellant's sentence is not inappropriately severe.

## B. Post-Trial Delay

Although not raised by Appellant, we note that this decision is not rendered within 18 months of this court docketing Appellant's case. Therefore, we review Appellant's case for excessive post-trial delay.

### 1. Additional Background

Appellant was sentenced on 10 August 2022. The military judge signed the entry of judgment on 7 September 2022. At that time, Appellant's sentence did not meet the jurisdictional requirements for direct appeal to this court. On 23 December 2022, Congress amended Articles 66 and 69, UCMJ, 10 U.S.C. §§ 866, 869. *See* The National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117–263, § 544, 136 Stat. 2395, 2582–84 (23 Dec. 2022). As amended, Article 66(b)(1)(A), UCMJ, expanded Court of Criminal Appeals (CCA) jurisdiction to any judgment of a special or general court-martial, irrespective of sentence, that included a finding of guilty. 10 U.S.C. § 866(b)(1)(A) (*Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*)).

On 3 January 2024—375 days after the enactment of Article 66(b)(1)(A), UCMJ (2024 *MCM*)—the Government notified Appellant of his right to appeal before this court along with a copy of a summarized record of trial.

On 14 February 2024, Appellant filed his notice of appeal pursuant to Article 66(b)(1)(A), UCMJ, with this court, and we docketed his case this same date. In this docketing notice, the court stated that it had not yet received the record of trial in Appellant's case and ordered the Government to "forward a copy of the record of trial to the court forthwith." When 120 days had elapsed and the court had not received Appellant's record of trial, on 25 June 2024 we ordered the Government to produce the record of trial not later than 25 July 2024. The Government provided the record of trial, with a verbatim transcript, to this court on 26 July 2024.

Subsequently, Appellant requested and received nine enlargements of time and ultimately submitted his brief on 9 July 2025. On 8 August 2025, the Government submitted its answer to Appellant's assignments of error.

### 2. Law

We review de novo whether an appellant is entitled to relief for post-trial delay. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citing *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006)).

In *Moreno,* the United States Court of Appeals for the Armed Forces (CAAF) identified thresholds for facially unreasonable delay during three

particular segments of the post-trial and appellate process. 63 M.J. at 141–43 (citations and footnotes omitted). Specifically, our superior court established a presumption of facially unreasonable delay where: (1) the convening authority did not take action within 120 days of the completion of trial, (2) the record was not docketed with the CCA within 30 days of the convening authority's action, or (3) the CCA did not render a decision within 18 months of docketing. *Id*. at 142.

In *Livak,* this court recognized that "the specific requirement in *Moreno* which called for docketing to occur within 30 days of action no longer helps us determine an unreasonable delay under the new procedural rules." 80 M.J. at 633. Accordingly, this court established an aggregated sentence-to-docketing 150-day threshold for facially unreasonable delay in cases that were referred to trial on or after 1 January 2019. *Id*. (citation omitted).

However, in light of subsequent statutory changes, this court recently found the 150-day threshold established in *Livak* does not apply to direct appeals, such as Appellant's, that are submitted under the amended Article 66(b)(1)(A), UCMJ, effective 23 December 2022. *See United States v. Boren*, No. ACM 40296 (f rev), 2025 CCA LEXIS 103, at *47 (A.F. Ct. Crim. App. 19 Mar. 2025) (unpub. op.). This court noted, "[t]hese statutory changes substantially altered the sequence of post-trial events in such [direct appeal] cases" as compared to the mandatory review cases our superior court contemplated in *Moreno*. *Id*. at 47–48. Therefore, although we acknowledge appellants in such cases still enjoy constitutional due process rights to timely post-trial review, we decline to establish a new specific timeframe for a facially unreasonable delay from sentence-to-docketing in direct appeal cases.

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). In *Barker*, the Supreme Court also identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id*. at 138–40 (citations and footnotes omitted). "Of those, the most serious is the last [type], because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Additionally, where an appellant has not shown prejudice from the delay, we cannot find a due process violation unless the delay is so egregious as to

"adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Independent of any due process violation, this court may provide appropriate relief where there is "excessive delay in the processing of the court-martial after the judgment was entered into the record." *United States v. Valentin-Andino*, 85 M.J. 361, 364 (C.A.A.F. 2025) (citing Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2)).

If a CCA decides relief is warranted for excessive post-trial delay under Article 66(d)(2), UCMJ, "that relief must be 'appropriate,' meaning it must be suitable considering the facts and circumstances surrounding that case." *Id.* at 367. "This does not require a [CCA] to provide relief that is objectively meaningful, and it does not obligate a [CCA] to explain its reasoning regarding the relief it does provide." *Id.*

### 3. Analysis

We evaluated the 553-day lapse of time between Appellant's sentencing and docketing with this court; in particular, we considered the 375 days that elapsed between the enactment of Article 66(b)(1)(A), UCMJ (2024 *MCM*), and the Government's notification to Appellant that he was eligible to appeal to this court. Although we continue to decline to establish a new specific timeframe for a facially unreasonable delay from sentence-to-docketing in direct appeal cases, *see Boren*, unpub. op. at *47–48, we recognize an appellant may be able to demonstrate a case-specific facially unreasonable delay that warrants a due process analysis in light of the *Barker* factors. *See United States v. Gonzalez*, No. ACM 24001, 2025 CCA LEXIS 412, at *16–17 (A.F. Ct. Crim. App. 29 Aug. 2025) (unpub. op.) (citation omitted). However, assuming without holding there was a facially unreasonable pre-docketing delay in this case, Appellant has not claimed any prejudice, and we do not find the delay so egregious as to affect public perception of the fairness and integrity of the military justice system. *See Toohey*, 63 M.J. at 362.

We also evaluated the post-docketing delay since this court did not render a decision within 18 months of docketing, and as such, there has been a facially unreasonable appellate delay. *Moreno*, 63 M.J. at 142. However, Appellant does not claim prejudice from this delay either. In addition, Appellant asked for nine enlargements of time even after receiving the transcribed record of trial. This court is issuing its opinion within two months of receiving the Government's answer to Appellant's assignment of error. Under the circumstances, we do not find the appellate delay in this case so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362.

Finally, recognizing our authority under Article 66(d)(2), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. We conclude it is not.

### III. CONCLUSION

As entered, the findings are correct in law. Article 66(d), UCMJ, 10 U.S.C. § 866(d) (2024 *MCM*). In addition, the sentence is correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Article 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court