# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

### No. ACM 40601

_____

### UNITED STATES
*Appellee*

**v.**

### Christian K. KEILBERG
Senior Airman (E-4), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 22 October 2025

_____

*Military Judge*: Charles E. Wiedie, Jr.

*Sentence*: Sentence adjudged 10 October 2023 by GCM convened at Joint Base McGuire-Dix-Lakehurst, New Jersey. Sentence entered by military judge on 10 October 2023: Dishonorable discharge, confinement for 24 months, and reduction to E-1.

*For Appellant*: Major Frederick J. Johnson, USAF.

*For Appellee*: Colonel Matthew D. Talcott, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Kate E. Lee, USAF; Major Adam M. Love, USAF; Captain Catherine D. Mumford, USAF; Mary Ellen Payne, Esquire.

Before GRUEN, PERCLE, and MORGAN, *Appellate Military Judges*.

Judge MORGAN delivered the opinion of the court, in which Senior Judge GRUEN and Judge PERCLE joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

MORGAN, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas and pursuant to a plea agreement, of one specification of attempted sexual assault of a child, and one specification of attempted sexual abuse of a child, both in violation of Article 80, Uniform of Code Military Justice (UCMJ), 10 U.S.C. § 880.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 24 months, and reduction to the grade of E-1.[2] The convening authority took no action on the findings or the sentence.

Appellant raises four issues on appeal, which we have rephrased: (1) whether unreasonable delay in post-trial processing warrants relief; (2) whether the 18 U.S.C. § 922 firearms prohibition is unconstitutional as applied to Appellant; (3) whether Appellant's plea of guilty was improvident because the providence inquiry did not include a discussion of Appellant's mental health care; and (4) whether the Air Force Office of Special Investigations (OSI) post court-martial presentation of evidence to civilian authorities warrants relief.[3]

With respect to issue (2), we have carefully considered this issue and find Appellant is not entitled to relief. *See United States v. Lepore,* 81 M.J. 759, 763 (A.F. Ct. Crim. App. 2021) (en banc) (holding a Court of Criminal Appeals lacks the authority to direct modification of the 18 U.S.C. § 922(g) prohibition noted on the staff judge advocate's indorsement); *see also United States v. Johnson,* __ M.J. __, No. 24-0004, 2025 CAAF LEXIS 499, at *13–14 (C.A.A.F. 24 Jun. 2025) (holding Courts of Criminal Appeals lack "authority to modify the [18 U.S.C.] § 922 indication" in the entry of judgment); *United States v. Vanzant,* 84 M.J. 671, 681 (A.F. Ct. Crim. App. 2024) (concluding "[t]he firearms prohibition remains a collateral consequence of the conviction, rather than an

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ, Rules for Courts-Martial, and Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The plea agreement required the military judge impose confinement between 8 and 16 months for the attempted sexual assault of a child specification, and confinement between 4 and 8 months for the attempted sexual abuse of a child, with terms of confinement to be served consecutively. Consistent with the plea agreement, two additional specifications of attempted sexual assault of a child in violation of Article 80, Uniform of Code Military Justice (UCMJ), 10 U.S.C. § 880, and one specification of indecent language in violation of Article 134, UCMJ, 10 U.S.C. § 934, were withdrawn and dismissed with prejudice to "attach . . . upon final appellate review." Appellant was credited with 188 days of pretrial confinement credit.

[3] Appellant personally raises issues (3) and (4) pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982).

element of findings or sentence, and is therefore beyond our authority to review"), *aff'd*, No. 24-0182/AF, 2025 CAAF LEXIS 830 (C.A.A.F. 1 Oct. 2025).

As to the remaining issues, we find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

At the time of his offenses, Appellant was assigned to Joint Base McGuire-Dix-Lakehurst (JB MDL), New Jersey. His on-line dating application profile accurately identified him as a 31-year-old military member located at JB MDL. On 20 March 2023, through this dating application, Appellant matched with PG, who represented she was 18 years of age. On the same day, PG texted Appellant that she was "about to turn 15 in a couple months." Thereafter, Appellant believed he was communicating with a 14-year-old girl. Appellant and PG expanded their communications and began communicating through various messaging platforms. During their communications, Appellant messaged PG, *inter alia*, that he was interested in "creampies, CNC, taboo roleplay, more gentle stuff too."[4] Appellant later texted, "I'd love to pick you up and see how good your head game is while I drive us around somewhere that I can take my time with you, filling you up," and he inquired, "[D]on't you want your Daddy to get you pregnant?"

Communications between Appellant and PG continued over a video capable application for five days, until 25 March 2023, wherein, *inter alia*, Appellant told PG he knew his conduct was wrong and that he harbored concerns PG could be law enforcement, but he nonetheless began making plans to meet her after she assured him she was not a "catfish."

On 25 March 2023, Appellant, *inter alia*, requested PG "[s]how more of [herself]," "give [him] a show," and stated, "Good Dad wants to see you." When PG asked Appellant if he was interested in visiting her house, he replied, "I'm gonna have you on your knees first, show your Dad how much you love being a little slut, what's the address?"

Upon receipt of PG's address, which was approximately 73 miles from JB MDL, Appellant began driving to meet PG in person. When he arrived, Appellant was met not by a 14-year-old PG, but was confronted by the host of a civilian, online streaming channel that conducts online sting-like operations to catch individuals seeking to engage in child sexual assault and abuse. Appellant's arrival and confrontation were recorded and live streamed on the

---

[4] During his plea inquiry, Appellant described a "creampie" as "having unprotected sex," and described "CNC" as "aggressive sex."

Internet, during which Appellant identified himself as an Air Force service-member, admitted he believed PG was 14 years old, that he "wanted to do all kinds of nasty things to her," and that "some of [his] fantasies involve step-daughter-stepfather relations." One of the streaming channel members called the local police department, and officers were dispatched to arrest Appellant.

## II. DISCUSSION

### A. Post-Trial Delay

#### 1. Additional Background

Appellant was sentenced on 10 October 2023, and the military judge entered the judgment on 6 November 2023. The Record of Trial (ROT) was certified on 13 November 2023. From 14 November 2023 through 7 February 2024, the ROT underwent review for appropriate redactions and corrections. From 8 February 2024 through 10 March 2024, the general court-martial convening authority's servicing legal office elected to await completion of ten ROTs in addition to Appellant's, to forward them all in one consolidated shipment to the Air Force Military Appellate Records Branch (JAJM), which ultimately arrived on 11 March 2024. On that same day, base legal personnel identified that the pretrial confinement review officer (PCRO) had not sealed potential child sexual abuse material submitted during Appellant's pretrial confinement hearing. From 12 March 2024 through 9 April 2024, base legal personnel endeavored to resolve the issue, to include higher headquarters coordination, and requested the military judge order the evidence be sealed, but believed he lacked authority to reopen the court. The record of trial was then docketed with this court on 12 April 2024, which we later ordered the materials be sealed. Appellant submitted his assignments of error brief on 7 July 2025, in which he seeks relief, *inter alia*, for unreasonable delay in post-trial processing.

On 15 August 2025, this court granted the Government's motion to attach declarations offered in response to Appellant's claim of excessive post-trial delay, which included a chronology of post-trial case processing.[5] Appellant argues relief is warranted because based on the facts stated *supra*, 185 days from sentencing to docketing with this court evinces "institutional neglect" and "gross indifference" towards post-trial processing. While we do not find this period of time insignificant, after fully considering the ROT,

---

[5] We consider the Government's declaration to help us resolve Appellant's claim of post-trial delay, which is not fully resolvable by the record. *See United States v. Jessie*, 79 M.J. 437, 445 (C.A.A.F. 2020).

declarations regarding post-trial processing, and applicable case law, we conclude relief is unwarranted.

**2. Law**

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). In *Moreno*, the CAAF established a presumption of facially unreasonable delay "where the action of the convening authority is not taken within 120 days of the completion of trial," "where the record of trial is not docketed by the [Court of Criminal Appeals (CCA)] within thirty days of the convening authority's action," or "where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the [CCA]." 63 M.J. at 142.

In *United States v. Livak*, this court adapted the *Moreno* standard for cases referred to trial on or after 1 January 2019 and established an aggregated 150-day standard for facially unreasonable delay from sentencing to docketing with the CCA. 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020).

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Id.* at 135 (citations omitted). The CAAF identified three types of cognizable prejudice for purposes of the right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted). Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

**3. Analysis**

### *a. Post-Trial Delay – Sentencing to Docketing*

The period between Appellant's sentencing on 10 October 2023, and the date the case was docketed with this court on 12 April 2024, totaled 185 days, exceeding the 150 *Livak* standard by 35 days. In response to Appellant's assignment of error, the Government submitted a reasonably comprehensive accounting of its post-trial processing efforts and acknowledged it elected to pause processing Appellant's case for 32 days until a tranche of 11 ROTs could be sent to JAJM contemporaneously.

We do not find this delay, on these facts, so egregious as to warrant relief. The original ROT was delivered on 11 March 2024, 153 days after sentencing. The following day, the base legal office case paralegal identified the existence of potential unsealed child sexual abuse material accompanying the pretrial confinement hearing documents included in the ROT. Thereafter, the detailed trial counsel promptly coordinated with higher headquarters for guidance before requesting the trial military judge seal the evidence.

At no time did Appellant assert a right to speedy post-trial processing to the convening authority, nor has Appellant alleged cognizable prejudice from the delay. We have not identified any particularized anxiety or concern Appellant experienced from the delay distinct from other appellants awaiting a decision on their appeal. Our review has not occasioned any rehearing, nor do we perceive particular reasons why any further appeal might be impaired due to the delay.

Absent prejudice, we find the post-trial delay involved in Appellant's case has not been so egregious as to adversely affect the perception of the military justice system. *See Toohey*, 63 M.J. at 362. Recognizing our authority under Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2), we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Valentin-Andino*, 85 M.J. 361, 366 n.4 (C.A.A.F. 2025). We conclude such relief is not warranted.

### b. Appellate Delay – Docketing to Decision

Though not raised as error by Appellant, we note over 18 months have elapsed since Appellant's record of trial was originally docketed with this court. Therefore, under *Moreno*, there is a facially unreasonable delay, although we note the 18-month threshold has been exceeded by less than one month. Accordingly, we have considered the *Barker* factors and find no violation of Appellant's due process rights. Significantly, Appellant moved this court for 12 enlargements of time, over government opposition, totaling 451 days from docketing with this court to the date Appellant filed his brief. Appellant has not alleged any particularized prejudice from this period of delay, and we perceive none. Absent prejudice, we find the delay involved in Appellant's case—primarily attributable to the defense motions for enlargements of time—has not been so egregious as to adversely affect the perception of the military justice system. We also conclude no such relief is warranted under Article 66(d)(2), UCMJ.

## B. Providence of Guilty Plea

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant also contends "the deprivation of mental health care and lack of discussion about this issue during the court-martial" rendered his guilty plea

improvident. He argues he was unable to receive mental health treatment "when sought" because he was placed in pretrial confinement for 188 days, and the military judge did not inquire into the topic *sua sponte* during his plea.

### 1. Additional Background

Prior to Appellant's court-martial, a sanity board convened to address his mental state pursuant to Rule for Courts-Martial (R.C.M.) 706. The board determined that Appellant was not suffering from a mental disease or defect such that it would have caused him to be unable to appreciate the nature and quality or wrongfulness of his conduct, or such that he was unable to understand or cooperate in his defense. As part of the plea agreement, Appellant entered into a stipulation of fact (Prosecution Exhibit 1) wherein, *inter alia*, he agreed its stated facts were true and admissible for all purposes, to include that at all times during the charged misconduct, he "was aware of the wrongfulness of his actions," he "did not suffer from a severe mental disease or defect at the time of his criminal conduct," he "appreciated the nature, quality and wrongfulness of his actions," and he "underst[ood] the nature of the proceedings against him."

During the plea inquiry into the attempted sexual assault of a child specification, Appellant explained to the military judge:

> [Appellant]: Your Honor, on or about 25 March 2023, I drove to [the city] to meet [PG,] who I believed to be 14 at the time with the intent to commit sexual assault by penetrating her vulva with my penis. My actions were more than mere preparation. Driving to [the city] was a substantial step and direct move toward the commission of the sexual assault on [PG]. My driving to [the city] to meet [PG] would have resulted in the actual commission of sexual assault of a child except for [PG] was actually not the person she pretended to be but was instead a decoy over the age of 16 which was unknown to me at the time and consequently prevented me from the completion of sexual assault of a child.

When the military judge inquired whether Appellant believed he had any legal justification or excuse for attempting to commit sexual assault of PG, he replied, "No, Your Honor."

With regard to the attempted sexual abuse of a child specification, Appellant told the military judge:

> [Appellant]: Your Honor, I committed a lewd act upon [PG] by intentionally communicating to her indecent language of a sexual nature in messages. At the time I sent the sexually charged messages I believed [PG] was 14 years old. I communicated this

indecent language of a sexual nature to her to gratify my sexual desire. My actions would have resulted in the completion of sexual abuse of a child if [PG] had not actually been an adult decoy. I did not know that she was over the age of 16 when I communicated the indecent language to her.

In response to the military judge's inquiry whether Appellant believed he had any legal justification or excuse for attempting to commit sexual abuse of PG, he again replied, "No, Your Honor."

While discussing the terms of the plea agreement, Appellant confirmed he was not forced to enter into the agreement; that the agreement contained all understandings and agreements in his case; he understood the difference between trial by members and trial before military judge alone and voluntarily waived his right to trial by members; he waived the right to obtain personal appearances of any witness at government expense; and he confirmed no unwritten promises were made beyond the agreement.

The military judge also discussed the plea agreement provision to waive motions:

> [Military Judge (MJ)]: Your plea agreement also states that you waive, or give up, the right to make all motions that are waivable under the Rules for Courts-Martial. Have I correctly stated that term of your plea agreement?
>
> [Appellant]: Yes, Your Honor.
>
> MJ: I advise you that certain motions are waived, or given up, if you're [sic] defense counsel does not make the motion prior to entering your plea. Some motions, however, such as motions to dismiss for lack of jurisdiction, for example, can never be given up. Do you understand that this term of your plea agreement means that you give up the right to make any motion which by law is given up when you plead guilty?
>
> [Appellant]: Yes, Your Honor.
>
> MJ: In particular, do you understand that this term of your agreement may preclude this court or any appellate court from having the opportunity to determine if you're entitled to any relief based upon these motions?
>
> [Appellant]: Yes, Your Honor.

The military judge also elicited from trial defense counsel that the Defense initiated the waiver of motions provision, and that but for the plea agreement, the Defense would have pursued motions under Mil. R. Evid. 404(b), *Crimes, Wrongs, or Other Acts*; Mil. R. Evid. 414, *Similar crimes in child-molestation*

*cases*; R.C.M. 906(b)(12), *Unreasonable multiplication of charges*; and to compel a forensic psychologist or psychiatrist. The military judge ensured Appellant understood he was waiving these motions, had no questions about them, freely and voluntarily agreed to waive such motions, and desired to forgo making them to receive the benefit of the plea agreement.

During presentencing proceedings, the Government called Master Sergeant CG, Appellant's First Sergeant, who testified that during the early morning hours the day after Appellant's arrest, he took him to the local emergency room because Appellant made remarks that made the First Sergeant "think he might be having medical issues, mental health issues, things like that."

In his unsworn statement, Appellant discussed his "vague recollections" of childhood abuse, his marital challenges, his deployment to Saudi Arabia when his daughter was an infant, how he "self-destructively" began looking for more outlets as his pornography viewing increased, and that he missed months of his daughter's life while in pretrial confinement. However, he did not allude to a lack of mental responsibility, deprivation of pretrial mental health treatment, or reference his pretrial confinement conditions.

### 2. Law

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Blouin*, 74 M.J. 247, 251 (C.A.A.F. 2015) (citation omitted). "A military judge abuses this discretion if he fails to obtain from the accused an adequate factual basis to support the plea -- an area in which we afford significant deference." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (citation omitted). "The test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citation omitted).

We apply a "substantial basis" test by determining "whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Inabinette*, 66 M.J. at 322. An appellant bears the "burden to demonstrate a substantial basis in law and fact for questioning the plea." *United States v. Finch*, 73 M.J. 144, 148 (C.A.A.F. 2014) (quoting *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004)).

The military judge may consider both the stipulation of fact and the inquiry with the appellant when determining if the guilty plea is provident. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (citation omitted).

"[W]hen a plea of guilty is attacked for the first time on appeal, the facts will be viewed in the light most favorable to the [G]overnment." *United States v. Arnold*, 40 M.J. 744, 745 (A.F.C.M.R. 1994). "This court must find a

substantial conflict between the plea and the accused's statements or other evidence in order to set aside a guilty plea. The mere possibility of a conflict is not sufficient." *Hines*, 73 M.J. at 124 (internal quotation marks and citation omitted).

### 3. Analysis

To the extent Appellant suggests, but does not specifically argue, his plea is improvident for lack of mental responsibility, we have examined the record and find the possibility of lack of mental responsibility was not raised. We initially observe that an accused is presumed mentally responsible. *See* R.C.M. 916(k)(3)(A). In this case, a pretrial sanity board inquiry, conducted pursuant to R.C.M. 706, concluded Appellant was able to appreciate the wrongfulness as well as the nature and quality of his conduct, and that he was not suffering from a mental disease or defect rendering him unable to understand the nature of the proceedings against him or to conduct or cooperate intelligently in his defense. Additionally, Appellant did not identify lack of mental responsibility as a potential issue when entering his plea pursuant to a plea agreement wherein he "waived all motions which may be waived under the R.C.M.s," to include motions for expert witnesses who might have testified to mental health issues.

We do not find testimony from Appellant's First Sergeant regarding a trip to the emergency room triggered a requirement for the military judge to conduct additional or specific inquiry into Appellant's mental responsibility. Neither did Appellant set up inconsistencies during his unsworn statement requiring further inquiry by the military judge regarding Appellant's mental responsibility. *See Hines*, 73 M.J. at 124. Rather, Appellant discussed his "vague recollections" of childhood abuse, his marital challenges, his deployment to Saudi Arabia when his daughter was an infant, how he "self-destructively" began looking for more outlets as his pornography viewing increased, his general "sadness and anxiety" about his future, and that he missed months of his daughter's life while in pretrial confinement—all matters to be taken into consideration as possible mitigation. However, he did not allude to a lack of mental responsibility, any specific mental health diagnosis, or deprivation of necessary or requested pretrial mental health treatment.

Finally, Appellant did not raise any facts concerning noncompliance with R.C.M. 305 with respect to his pretrial confinement hearing, or an abuse of discretion or unduly harsh or oppressive pretrial conditions pursuant to Article 13, UCMJ, 10 U.S.C. § 813. On the contrary, Appellant waived all motions, understood the effects of his guilty plea, and received 188 days of pretrial confinement credit. Wherefore, we find no substantial basis in law or fact for questioning the Appellant's plea and find the military judge did not abuse his discretion in finding Appellant's plea provident.

## C. Civilian Criminal Proceedings

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant requests this court set aside his court-martial findings and sentence because he is presently the subject of a District Court criminal prosecution for separate offenses supported by evidence seized by the OSI before Appellant's court-martial. He argues he is entitled to relief because the Government "could have included charges for [this] additional misconduct, of which it was already aware, in his court-martial, but it chose not to do so."

In support of his claim, Appellant moved this court to attach to the record of trial post-trial documents consisting of a civilian criminal complaint against Appellant, dated 8 November 2024, filed in the United States District Court, District of New Jersey, alleging receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2)(A) and 2252A(b)(1). The complaint is supported by an affidavit from an OSI agent recounting the seizure of Appellant's electronic devices containing alleged child sexual assault material.

In the above-referenced stipulation of fact, Appellant agreed that in August 2022, prior to his arrest for attempting to meet with PG, he was advised of his Article 31, UCMJ, 10 U.S.C. § 831, rights; informed by OSI agents that he was suspected of soliciting minors, possession of child pornography, and sexual abuse of a child; and his electronic devices were subsequently seized, which led OSI "to continue investigating [Appellant] for the alleged offenses." He further stipulated, "As of the submission of this stipulation, no charges have been referred" as a result of these investigative efforts.

Beyond Appellant's agreement in the stipulation of fact that he knew he was under investigation for soliciting minors, possession of child pornography, and child sexual abuse, the record contains no information regarding the determination of their disposition by military or civilian authorities. Appellant cites no facts or authorities that cause us to inquire further behind the Air Force's election to prosecute him, or not, for independent offenses beyond those in the instant court-martial. Likewise, collateral decisions by civilian authorities after the completion of Appellant's court-martial are beyond this court's review.

## III. CONCLUSION

The findings are correct in law. *Manual for Courts-Martial, United States* (2024 ed.). In addition, the sentence is correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court